**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RUBEN AN,

*Plaintiff,*

v.

THE CITY OF NEW YORK,

*Defendant.*

Civil Case No.: 16 Civ. 05381 (LGS)

*Document Electronically Filed*

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S**
**MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

ARGUMENT ........................................................................................ 7

I.     PLAINTIFF HAS ALLEGED STANDING TO SEEK INJUNCTIVE RELIEF ..................................................................... 7

     A.    Plaintiff Has Alleged Sufficient Facts to Demonstrate a Likelihood of Future Harm ........................................................ 7

     B.    Plaintiff Has Alleged Sufficient Facts to Demonstrate an Official Policy or Its Equivalent ......................................... 11

II.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................... 15

III.   PLAINTIFF HAS ARTICULATED A BASIS TO SEEK DECLARATORY RELIEF ............................................................ 17

CONCLUSION ..................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Immigration and Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011)..............................................................................8, 13

*Allen v. Wright*,
468 U.S. 737 (1984)....................................................................................................................7

*Bertuglia v. City of N.Y.*,
839 F. Supp. 2d 703 (S.D.N.Y. 2012)...................................................................................12

*Boyd v. City of Oakland*,
58 F. Supp. 2d 1015 (N.D. Cal. 2006) ..................................................................................13

*Caruso v. Zugibe*,
2015 WL 5459862 (S.D.N.Y. June 22, 2015) ........................................................................8

*Chappell & Co. v Frankel*,
367 F.2d 197 (2d Cir 1966)....................................................................................................15

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................................................7, 11

*Connick v. Thompson*,
131 S. Ct. 1350 (2011)............................................................................................................11

*Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005)...................................................................................................18

*Edwards v. City of New York*,
2015 WL 5052637 (S.D.N.Y. Aug. 27, 2015).........................................................13, 14, 15

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.*,
522 F.3d 271 (2d Cir. 2008)...................................................................................................17

*Floyd v. City of New York*,
283 F.R.D. 153 (S.D.N.Y. 2012) ................................................................................8, 11, 12

*In re Prudential Lines Inc.*,
158 F.3d 65 (2d Cir. 1998).....................................................................................................17

*Jones v. Bock*,
549 U.S. 199 (2007)................................................................................................................16

*Knife Rights, Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015)............................................................................7, 10

*Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*,
   507 U.S. 163 (1993)........................................................................................16

*McAllister v. New York City Police Dep't*,
   49 F. Supp. 2d 688 (S.D.N.Y. 1999)..............................................................14

*McCants v. City of Newburgh*,
   2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014)............................................12, 13

*New York State Nat'l Org. for Women v. Randall Terry*,
   704 F. Supp. 1247 (S.D.N.Y.1989)..............................................................15, 16

*New York Times Co. v. Gonzales*,
   459 F.3d 160 (2d Cir. 2006)............................................................................17

*Nitke v. Ashcroft*,
   253 F. Supp. 2d 587 (S.D.N.Y. 2003)............................................................10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)..........................................................................................7

*Okin v. Village of Cornwall-on-Hudson Police Dep't*,
   577 F.3d 415 (2d Cir. 2009)........................................................................11, 12

*Rapa v. City of New York*,
   2015 WL 5671987 (S.D.N.Y. Sept. 25, 2015)..................................................9

*Roe v. City of New York*,
   151 F. Supp. 2d 495 (S.D.N.Y. 2001)........................................................8, 11, 12

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001)............................................................................16

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004)............................................................................7, 8

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)............................................................................13

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014)....................................................................................10

*Travellers Intern, AG v Trans World Airlines, Inc.*,
   722 F. Supp. 1087 (S.D.N.Y. 1989)................................................................15

Plaintiff Ruben An submits this memorandum of law in opposition to the motion filed by Defendant City of New York ("Defendant") to dismiss the Complaint.

## PRELIMINARY STATEMENT

Plaintiff has brought a civil rights action pursuant to 42 U.S.C. § 1983 against Defendant City of New York, challenging the constitutionality of the New York City Police Department's (the "NYPD's") widespread practice and custom of interfering with and deterring the exercise of the First Amendment right of individuals to film, photograph, videotape, or otherwise record (collectively, "record") NYPD officers performing their official duties in public places.   The City of New York has acquiesced to this pattern of constitutional violations – and effectively adopted the use of disorderly conduct and  obstruction of governmental administration charges to interfere with, preclude, and punish citizen recording – as its policy, through its failure to monitor, investigate, discipline or otherwise deter this practice.

Mr. An was arrested for filming an interaction between three NYPD officers and a man on a sidewalk in Manhattan. He challenges this arrest as retaliation of his First Amendment right to record and as government interference with his exercise of that right. Following his arrest, a supervising officer reviewed and approved formal charges for prosecution. Mr. An was subsequently tried in front of a jury on July 7-9, 2015 for disorderly conduct for obstructing a sidewalk, and with resisting arrest.  He was acquitted of both charges.  As was plain to the jury from the two videos that documented the entire interaction, the actions of the officers on July 28, 2014 were motivated by retaliation for recording and not because Mr. An broke any law.

Even after the jury's verdict, no action was taken by the NYPD to investigate the arresting officer in Mr. An's case, review his testimony or discipline him for interfering with Mr. An's constitutional rights. The arresting officer's actions and the NYPD's continuing failure to

monitor, investigate, and take disciplinary action against officers like the arresting officer in Mr. An's case has directly resulted in a chilling effect on Mr. An's subsequent desire to exercise his First Amendment right to record police officers.  Far from being an isolated incident, Mr. An's arrest (and both associated videos) reflects a NYPD practice of interfering with individuals' First Amendment right to record, and the City's failure to enforce what the FINEST message appears to (but does not in practice) prohibit.  Mr. An seeks declaratory and injunctive relief to address this violation of his constitutional rights and to prevent such violations in the future.

## **STATEMENT OF FACTS**

Plaintiff is a 24 year old man who resides in Queens County, New York.  (Compl. ¶ 1). For over two years, Mr. An has regularly recorded police officers conducting their official duties in public and plans to continue doing so in an exercise of his First Amendment rights.  (*Id.* at ¶ 26).

On July 28, 2014, between approximately 6:00 p.m. and 6:30 p.m., Mr. An was walking in the vicinity of East 8th Street and Lafayette Street in Manhattan, New York when he observed NYPD officers Bekim Becaj, Joseph Novellino, and Michael Digiacomo standing next to a phone booth interacting with a fourth man.  (*Id.* at ¶ 11-12).  It appeared that the officers were questioning this fourth man about an object the man was holding.  (*Id.* at ¶ 12).  Mr. An approached the area where the man and the officers were standing, stood on the curb, and began to film the interaction using his cellphone.  (*Id.*).

When Officer Bejac noticed that Mr. An had begun to film the interaction, he approached Mr. An and informed Mr. An that he was "in the proximity of a police investigation" and ordered him to step back.  (*Id.* at ¶ 14).  Mr. An complied with the order and moved away from the officers, at which point Officer Becaj ordered him to step even further away, saying that he was

blocking the sidewalk. (*Id.* at ¶ 15).  Mr. An again complied with the request and moved further away, toward the side of the building.  (*Id.*).  At this point, Officer Bejac attempted to make Mr. An stop recording by informing Mr. An that he was going to "wait until people come by and then you'll get issued a summons for disorderly conduct if anyone has to go around."  (*Id.* at ¶ 16). Mr. An complied for a third time, this time backing away until he was standing almost up against the side of the building, out of the way of pedestrian traffic as he continued to record.  (*Id.*).

Officer Becaj then informed Mr. An that he "just watched three people divert around you," and asked to see Mr. An's identification.  (*Id.* at ¶ 18).  When Mr. An did not immediately produce identification, Officer Becaj ordered Mr. An to put his phone down and stop filming and produce identification.  (*Id.*).  When Mr. An did not put his cellphone down and stop recording, Officer Becaj grabbed Mr. An, twisted Mr. An's arm behind his back thereby causing Mr. An to drop his cellphone, forcefully pushed him against the building wall, and placed him under arrest. (*Id.* at ¶ 19-20).  Mr. An's cellphone stopped recording when it hit the ground, and the phone was subsequently confiscated by Officer Becaj.  (*Id.* at ¶ 20).  Luckily, there was additional recorded video, taken not by Mr. An but by a street-facing camera owned by a local business, which confirmed precisely what Mr. An's own video recorded:  that he had not at all obstructed the police investigation or engaged in disorderly conduct.

Mr. An was charged with obstruction of governmental administration, two counts of disorderly conduct in violation of New York Penal Law 240.20 and resisting arrest in violation of New York Penal Law 205.30.  (*Id.* at ¶ 23).  Mr. An was held in police custody for approximately 15 hours.  (*Id.*)  One count of disorderly conduct and the obstruction of governmental administration were later dropped.  (*Id.* at ¶ 23 n.2).  A jury trial on the remaining

3

charges took place before Justice Gilbert Hong on July 7-9, 2015.  (*Id.* at ¶ 24).  The jury returned a not-guilty verdict on all counts.  (*Id.*).

Mr. An's arrest had a chilling effect on his exercise of his First Amendment rights, causing him to not record any police interactions for several months after his arrest and to record only rarely until the conclusion of his trial.  (*Id.* at ¶ 28).  Since the conclusion of the trial which acquitted him of all charges, Mr. An has gradually resumed filming public police activity – usually at least two times per month – but he films less frequently than he did previously because he fears additional pretextual arrests and prosecution in the future as a direct result of his prior arrest while recording and the NYPD's subsequent failure to pursue any investigation or discipline of Officer Becaj, the arresting officer.  (*Id.* at ¶ 29).  In spite of the concerns and anxiety this experience causes Mr. An to feel whenever he films police officers, Mr. An has continued to record police activity and will continue to do so going forward, as he believes that recording police officers is essential to ensuring that NYPD officers are held accountable for their conduct, and is useful in educating the public about police misconduct.  (*Id.*).

Mr. An has further alleged that his experience was far from an isolated incident of police misconduct.  Rather, Mr. An has alleged that the City and the NYPD maintain a widespread practice and custom of permitting NYPD officers to interfere with the First Amendment rights of individuals who, without interfering with police activity, record or attempt to record such activity in public places.  (*Id.* at ¶ 32).  The custom and practice is demonstrated by repeated instances of NYPD officers arresting individuals recording or attempting to record police activity, threatening to arrest such individuals, filing charges against such individuals on pretextual allegations as punishment for recording police activity, and otherwise preventing or hindering individuals from recording police activity.  (*Id.*). It is further demonstrated by the NYPD's acquiescencein  this

practice in failing to monitor, investigate or take disciplinary action against officers involved in interfering with the right to record, including its failure to take any action against Officer Becaj.

Mr. An also describes three additional specific cases in which NYPD officers took similar retaliatory measures against individuals who attempted to record police activity. (*Id.*). These three examples, together with Mr. An's case, represent a tiny fraction of the actual number of recent instances of NYPD officers interfering with the First Amendment rights of individuals recording or attempting to record police activity.  (*Id.* at ¶ 33).

The conduct of the NYPD officers toward Mr. An on July 28, 2014 undermines the appearance conveyed by a FINEST message (the "FINEST Message") put out by the NYPD in August 2014 addressing "Recording of Police Action by the Public."  (*Id.* at ¶ 36).  The FINEST Message states, "Members of the service are reminded that members of the public are legally allowed to record (by video, audio, or photography) police interactions. These interactions include arrest and other situations."  (*Id.*).  The FINEST Message purports to prohibit NYPD officers from "interfer[ing] with a person's use of recording devices to record police interactions," and  acknowledges that  "intentional interference such as blocking or obstructing cameras or ordering the person to cease…violates the First Amendment."  (*Id.*).

However, the policy suggested in the FINEST Message is a mirage.  The NYPD does not sufficiently train, monitor, supervise or discipline officers to deter interfering with recording or using the criminal justice process in retaliation for recording.  (*Id.* at ¶ 37).   Nor has it instituted any training, monitoring, or supervision to ensure that officers comply with the FINEST Message and refrain from violating First Amendment rights by interfering with individuals who attempt to record officers.  (*Id.*).   As a result, the NYPD maintains a widespread practice and

custom of interfering with the rights of individuals who record or attempt to record police officers performing their official duties in public places. (*Id.* at ¶ 38).

Mr. An provided an additional four examples of specifics cases in which NYPD officers interfered with the First Amendment rights of individuals who were filming or attempting to film NYPD officers *after* the FINEST message had been issued. (*Id.*). In all four cases, the pretextual charges brought against the individuals who were filming were dismissed or adjourned in contemplation of dismissal. (*Id.*).

The NYPD's practice and custom of interfering with individuals who record or attempt to record police officers is so persistent, widespread, and pervasive as to constitute a custom or usage and imply the constructive knowledge or acquiescence of the City and its policymakers. (*Id.* at ¶ 41). The constitutional violations are so numerous, persistent, and pervasive that the need for corrective action is obvious, and the City's failure to take any such action constitutes deliberate indifference. (*Id.*).

Consequently, Mr. An respectfully requests that the Court grant: 1) a declaratory judgment that the City violated Mr. An's rights under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983, and that Mr. An's attempted recording of NYPD officers on July 28, 2014 was an act protected by the First Amendment to the Constitution; and 2) a permanent injunction restraining the City of New York and its employees from punishing or otherwise retaliating against Mr. An or any other individual who, without interfering with police activity, records or attempts to record police officers who are performing official duties in a public place.

## ARGUMENT

## I.   PLAINTIFF HAS ALLEGED STANDING TO SEEK INJUNCTIVE RELIEF

In order to establish constitutional standing, a complaint must adequately plead three requirements: 1) injury in fact, which requires an injury that is distinct and palpable, not abstract, conjectural, or hypothetical; 2) causation, which requires an injury that is "fairly traceable" to the challenged action; and 3) redressibility, which requires that relief from the injury be likely to follow from a favorable decision. *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The Second Circuit has held that a plaintiff seeking injunctive relief must also establish "both a likelihood of future harm and the existence of an official policy or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

### A.   Plaintiff Has Alleged Sufficient Facts to Demonstrate a Likelihood of Future Harm

Mr. An has alleged a likelihood of future harm sufficient to confer standing to seek injunctive relief.  Likelihood of future harm must be "'both real and immediate, not conjectural or hypothetical.'" *Shain*, 356 F.3d at 215 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). The Complaint pleads facts sufficient to establish a risk of future harm that is neither conjectural nor hypothetical: Mr. An was the victim of a pretextual arrest and prosecution for recording police activity in response to which the City failed to take any remedial action; Mr. An continues to live in New York City and record police activity; and multiple similar pretextual arrests and prosecutions have occurred both before and after Mr. An's arrest and the issuance of the FINEST Message.  Comparable allegations have been repeatedly held sufficient, in such cases as *Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) (overturning a district court decision and finding that the individual plaintiffs who filed a § 1983 action against the City alleging that its proscription against "gravity knives" was unconstitutionally vague sufficiently plead a likelihood

of future harm to establish standing); *Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001) (finding that a class of intravenous drug users who participated in state-authorized needle exchange programs ("NEPs") had standing to seek an injunction against police for targeting NEP members for arrest); *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012) (finding that a plaintiff who was unconstitutionally stopped and frisked sufficiently plead a likelihood of future harm and had standing to pursue injunctive relief); and *Aguilar v. Immigration and Customs Enf't Div. of the U.S. Dept. of Homeland Sec.*, 811 F. Supp. 2d 803 (S.D.N.Y. 2011) (holding that a fear of future unconstitutional searches after the plaintiffs' home had been unconstitutionally searched by ICE agents was sufficient to establish standing)..

Mr. An's allegations of future harm stand in stark contrast to those allegations found insufficient where the accumulation of required inferences rendered the likelihood of similar future harm improbable. *See, e.g., Shain*, 356 F.3d at 216 (holding that the plaintiff failed to establish a sufficient likelihood of a future harm where doing so would require him to show "that *if* he is arrested in Nassau County and *if* the arrest is for a misdemeanor and *if* he is not released on bail and *if* he is remanded to NCCC and *if* there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched."); *Caruso v. Zugibe*, 2015 WL 5459862, at *6 (S.D.N.Y. June 22, 2015) (holding that the plaintiff failed to establish a sufficient likelihood of future harm, where the court would have to assume that, "(i) plaintiff will be the victim of another crime in Rockland County; (ii) the perpetrator of that crime will be prosecuted by the Rockland County District Attorney; (iii) the Rockland County District Attorney will negotiate a plea deal with the perpetrator of the crime; (iv) the Rockland County District Attorney will fail adequately to consider plaintiff's input when negotiating and finalizing that plea deal; and (v) the Rockland County Court will accept the plea deal without ensuring

8

plaintiff's input was considered."); *Rapa v. City of New York*, 2015 WL 5671987, at *2

(S.D.N.Y. Sept. 25, 2015) (plaintiff lacked standing to pursue an injunction against the NYPD

because plaintiff did not live in New York City, alleged only a single incident of past

discrimination, and offered nothing more than a bare allegation that he expects to interact with

NYPD on future visits).

       Those cases denied standing because the pleader required a series of improbable facts to

recur that might render any possible risk of the same harm occurring in the future hypothetical or

speculative.  In contrast, here, Mr. An's risk of future harm is embodied by one fact: Mr. An has

continued filming NYPD officers since his arrest, and future harm would require only that an

NYPD officer once again arrest him or otherwise interfere with his filming while he is doing so.

Mr. An alleges that the NYPD maintains a widespread practice of arresting individuals who

record or attempt to record officers, and these allegations are supported by numerous specific

examples of similar incidents where individuals were arrested for attempting to record police

officers and where the charges against the individuals attempting to record were pretextual and

eventually dismissed.  (Compl. ¶¶ 33, 38).  Further, the NYPD failed to take any corrective

action towards the officer who violated Mr. An's rights and continues to acquiesce to other

officers' unconstitutional interference with people who are lawfully recording police encounters.

Mr. An's situation is wholly unlike the cases where allegations of future harm were found to be

insufficient because in those cases, the accumulation of required inferences rendered the

likelihood of similar future harm improbable or speculative.  Mr. An's fear of rearrest is not

speculative; it is grounded in his own prior experience, the City's failure to take corrective action

in light of his case, and the prevalence of recent similar violations against others and the City's

failure to take corrective action in light of the conduct of officers in those cases as well.

Additionally, Mr. An has experienced an ongoing chilling of his First Amendment rights – as a result of his year-long fight to maintain his liberty under threat of criminal conviction – that is neither hypothetical nor conjectural.  In First Amendment cases, a plaintiff's injury in fact often derives from the chilling effect on the plaintiff's constitutional rights resulting from the complained of behavior or law.  *Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 596 (S.D.N.Y. 2003). Here, Mr. An has alleged that "Officers Becaj, Novellino, and Digiacomo, employed by and acting on behalf of the Defendant, harmed Mr. An by interfering with his exercise of his First Amendment rights. The complained of conduct chilled the exercise of Mr. An's constitutional rights."  (Compl. ¶ 25).  Specifically, Mr. An has been "[c]hastened, worried, and deterred by the City's response" and "did not record any police interactions for several months after his arrest and recorded only rarely until the conclusion of his trial, which has resulted in acquittal on all charges."  (*Id.* at ¶ 28).  The chilling effect has endured since the conclusion of Mr. An's trial, and although he gradually resumed recording police officers, he does so "less frequently than previously because he fears future pretextual arrests and prosecution as a result of his recording of police officers."  (*Id.* at ¶28).  This chilling effect amounts to continuous harm experienced by Mr. An as a result of the violation of his First Amendment rights and his arrest on July 28, 2014. Given the continuous and ongoing nature of this chilling effect on his rights, Mr. An's risk of future harm is far from conjectural or hypothetical.

The Second Circuit has found a likelihood of future harm where a plaintiff "expressed [his] intent (but for the fear of prosecution) to engage in the very conduct that prompted defendants' prior enforcement action" against him.  *Knife Rights*, 802 F.3d at 385-86 (citing *Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2346 (2014)).  The Complaint makes precisely this allegation: Mr. An has continued to film police officers since his arrest and plans to

continue doing so but for his fear of future pretextual arrests and prosecution for this activity. (Compl. ¶¶ 26, 29).   The Complaint therefore sufficiently alleges a likelihood of future harm.

The adequacy of the standing allegations here is also supported by cases where courts have recognized a risk of future harm sufficient to confer standing because a plaintiff has been arrested for *lawful* conduct.  *Roe*, 151 F. Supp. 2d at 503 (a class of intravenous drug users who participated in state-authorized needle exchange programs ("NEPs") had standing to seek an injunction against police for targeting NEP members for arrest).  Mr. An intends to engage in lawful conduct by filming police officers performing their official duties in public without interfering with the officers.  Unlike the allegations of future injury in *Lyons*, which required "a string of unlikely contingencies," here, the "risk of future injury does not depend on [the plaintiff] being arrested for *unlawful* conduct and so he cannot avoid that injury by following the law."  *Floyd*, 283 F.R.D. at 169-70 (distinguishing *Lyons* where the plaintiff was stopped and frisked "while going about his daily life – walking down the sidewalk") (emphasis added).

## B.     Plaintiff Has Alleged Sufficient Facts to Demonstrate an Official Policy or Its Equivalent

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  A municipality may be found to have a custom that gives rise to a constitutional violation if, when faced with a pattern of misconduct, it "does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009).

Mr. An has sufficiently alleged the existence of "an official policy or its equivalent," which includes a widespread practice that amounts to either a citywide custom or a municipal failure to train. *See Okin*, 577 F.3d at 439-40.  The City makes much of the fact that Mr. An has been arrested and tried only once for exercising his constitutional rights to record police conduct, but , "there is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury." *Floyd*, 283 F.R.D. at 171 (citing *Roe*, 151 F.Supp.2d at 503).  Even if Mr. An's personal experience on its own were insufficient – which it is not – the Complaint offers ample additional factual support to bolster the allegation that the widespread practice of interfering with and arresting people for exercising the First Amendment right to record police officers.  The Complaint details three similar incidents of NYPD interference with the First Amendment rights of individuals attempting to record police officers that resulted in charges of officer misconduct or civil rights claims against the City.  (Compl. ¶ 32).  The Complaint additionally describes four cases where NYPD officers interfered with and arrested individuals who were attempting to record police officers *after* the NYPD put out the FINEST Message.  (*Id.* at ¶ 38).  In all those cases, the charges against the individuals attempting to record were pretextual and were either dismissed or adjourned pending dismissal.  (*Id.*). Courts have found such allegations in other cases sufficient to establish an official policy or its equivalent.  *McCants v. City of Newburgh*, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where the plaintiff cited similar prior lawsuits as evidence that the City was on prior notice of the misconduct), *clarified by and reconsideration denied*, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014); *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 738–39 (S.D.N.Y. 2012) (denying motion to dismiss where the plaintiff cited cases of similar misconduct, as well as a state criminal court opinion documenting misconduct in the plaintiff's

case, thereby "allow[ing] the [c]ourt to draw the inference that there is a history of [misconduct]"), *appeal dismissed*, 509 F. App'x 43 (2d Cir. 2013).

Furthermore, the Complaint alleges more than that these examples represent discrete instances of NYPD officers violating an individual's First Amendment rights. The Complaint specifically alleges that these incidents are the result of a policy of deliberate indifference on the part of the City, which was on notice of repeated instances of NYPD officers violating the First Amendment rights of individuals attempting to record police officers. (*Id.* at ¶¶ 40-41). The informal acts or omissions of supervisors are sufficient to allege that the NYPD's policy is to arrest individuals who record police officers, using obstruction of governmental administration or comparable charges. *See Aguilar*, 811 F. Supp. 2d at 828. There is no evidence that the NYPD has attempted to enforce the FINEST message or provide training or oversight to ensure officer compliance. (Compl. ¶ 37). "Because [i]t is unlikely that a plaintiff would have information about [a municipality's] training programs or about the cause of the misconduct at the pleading stage, a plaintiff need only plead that the city's failure to train caused the constitutional violation." *Edwards v. City of New York*, 2015 WL 5052637, at *4 (S.D.N.Y. Aug. 27, 2015) (internal quotations omitted). These omissions, coupled with the actions taken by officers to arrest individuals for recording officers, properly plead a widespread practice that amounts to a citywide custom.

Contrary to Defendant's assertions, Mr. An does not intend to use the mere existence of other lawsuits as evidence of municipal policy, but rather to allege that Defendant had *notice* of repeated allegations of misconduct, including after the FINEST message was issued, and yet took no corrective action. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008); *McCants*, 2014 WL 6645987, at *4. Defendant's reliance on *Boyd v. City of Oakland* is

misplaced.  (Def. Mem. Of Law at 8 (citing 58 F. Supp. 2d 1015 (N.D. Cal. 2006))).  In *Boyd*,

the Northern District of California declined to take judicial notice under Fed. R. Evi. 201 of

lawsuits as evidence of municipal policy on a summary judgment motion.  Nor is Mr. An asking

the Court to take judicial notice of the lawsuits cited in his Complaint.  Rather, Mr. An includes

allegations of the existence of other lawsuits to plead that Defendant was on notice of officer

misconduct.  These allegations further support Mr. An's allegations that the FINEST message

does not represent the "official policy" of the NYPD because even after its issuance, the NYPD

continued to receive multiple reports of officer misconduct and took no corrective action.  (*See*

Compl. ¶¶ 37-38).

Defendant further argues that the newspaper article cited in the Complaint is

"inadmissible hearsay and may not be considered."  However, newspapers may be admissible to

show notice.  *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y.

1999).  The case Defendant cites for its argument expressly states that newspapers may be

admissible to show notice:  "Newspaper articles are hearsay [and] therefore are not admissible

evidence of New York City Police Department policy or custom (*although they might be*

*admissible to show notice to the City of allegations of misconduct*)."  *Id.*  (emphasis added).  The

newspaper cited in the Complaint serves precisely this purpose: to allege that Defendant had

notice of repeated allegations of misconduct and chose not to implement any reforms to address

such misconduct.

Courts have found that standing to bring a claim against a municipality exists in cases

where a complaint details similar instances of constitutional violations buttressed by news

reports detailing the same misconduct because the municipality had notice of a possible pattern

of constitutional violations and did not act.  *See Edwards*, 2015 WL 5052637, at *6 n.3.  In

14

*Edwards,* the court denied a motion to dismiss where the City challenged the plaintiffs' allegation that the City was aware of similar prior lawsuits on the ground that those suits did not evidence actual wrongdoing: "Civil suits filed prior to plaintiff's beating alleging that DOC officers used excessive force are relevant here not because they prove that such excessive force actually occurred, but rather because they support the inference that the City was aware of the possible use of excessive force by officers prior to the incident at issue." *Id.* Furthermore, Mr. An does not solely rely on these prior suits to support his claims but also cites a news article detailing the widespread problem of arrest people for recording police activity. The lawsuits and news article cited in the Complaint demonstrate that the City was on notice of potential widespread First Amendment violations by the NYPD against individuals attempting to record police officers. The City's failure to take any action in response demonstrates deliberate indifference to the widespread misconduct of NYPD officers. Mr. An has therefore established standing to seek injunctive relief.

## II.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Mr. An's Complaint satisfies the pleading requirements for injunctive relief. Permanent injunctive relief is appropriate if (1) plaintiffs are successful on the merits of their claim, (2) there is no available remedy at law and (3) the balance of equities favors granting such relief. *See New York State Nat'l Org. for Women v. Randall Terry,* 704 F. Supp. 1247, 1262 (S.D.N.Y. 1989), *aff'd as modified,* 886 F.2d 1339, 1362 (2d Cir.1989); *Travellers Intern, AG v Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989). A permanent injunction is ordinarily issued only "after a full trial on the merits." *Chappell & Co. v Frankel*, 367 F.2d 197, 203 (2d Cir 1966).

Defendant's reliance on Federal Rule of Civil Procedure 65(d) as a basis for dismissing the pleading is baseless. Rule 65(d) governs the contents of remedial permanent injunction *orders*, not pleadings. Rule 8(a)(2) requires a complaint to articulate "a short and plain statement of the claim showing that the pleader is entitled to relief." As to remedy, Rule 8(a)(3) requires only that a complaint include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 65 contains no additional pleading requirements, and courts may not add to the pleading requirements set forth in the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 216-17 (2007) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)).

The Court will determine whether Mr. An's request for injunctive relief should be granted after Mr. An has been successful on the merits of his claim, not on this motion to dismiss. *See New York State Nat'l Org. for Women,* 704 F. Supp. at 1262. Holding Mr. An to the specificity standards for permanent injunction orders at the pleading stage would necessitate speculation about the exact reforms required to remedy ongoing constitutional violations of an opaque government agency. Mr. An is entitled to the discovery process to fully examine the actions and omissions of the NYPD in regards to officers systematically interfering with the right of New Yorkers to record police encounters, and formulation of remedial orders, including injunctive relief, depends on a judgment of such facts as are established at trial. Given the importance of the discovery process in informing Mr. An's request for injunctive relief, it would be inappropriate to require such a level of specificity at the pleading stage, and indeed, Defendant does not cite any authority for the proposition that Rule 65's standards apply to assessing a complaint at the pleading stage.

16

The only authority Defendant cites, *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001), does not address the pleading requirements for a claim seeking injunctive relief; it is a decision reviewing the district court's permanent injunction order for clarity and specificity.

Defendant's assertion that Mr. An's request for a permanent injunction in this matter would amount to "a simple command to obey the law" is premature and inaccurate.  It ignores the way in which a remedial order will be framed based on the failures of the NYPD, documented in the Complaint, in failing to adequately monitor, audit, supervise or discipline officers who have violated individuals' First Amendment right to record.  (*See* Cmplt. ¶¶ 32-41).

## III.   PLAINTIFF HAS ARTICULATED A BASIS TO SEEK DECLARATORY RELIEF

At the pleading stage, Mr. An has sufficiently alleged a claim for declaratory relief.  A district court may issue a declaratory judgment in "a case of actual controversy within its jurisdiction."  *New York Times Co. v. Gonzales*, 459 F.3d 160, 165 (2d Cir. 2006).  An actual controversy exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998) (internal quotation marks omitted).  The fact that liability may be contingent "does not necessarily defeat jurisdiction of a declaratory judgment action.  Rather, courts should focus on the practical likelihood that the contingencies will occur."  *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 278 (2d Cir. 2008) (internal quotation marks omitted).

Mr. An has alleged a present and immediate controversy between himself and Defendant, over whether Defendant violated Mr. An's civil rights when NYPD officers arrested him for

filming them on July 28, 2014, and whether its policy is consistent with First Amendment

obligations.  Defendant's allegation that the acts that occurred on July 28, 2014 constitute the

entirety of the dispute misstates the Complaint's allegations; throughout, Mr. An alleges a

likelihood of future harm related to the specific instance of the NYPD violating his First

Amendment rights on July 28, 2014.  (*See, e.g.*, Compl. ¶ 28-29).

      Because a practical likelihood of future harm exists, a declaratory judgment may serve "a

useful purpose in clarifying or settling the legal issues involved" and may "offer relief from

uncertainty."  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co*., 411 F.3d 384, 389 (2d Cir.

2005).  That is enough for pleading purposes; what the relief will in fact be, should Mr. An

prevail, is determined at that time, not now.

## CONCLUSION

      For the foregoing reasons, Defendant's Motion to Dismiss the Complaint should be

denied.

September 16, 2016
New York, New York

/s/Cynthia Conti-Cook
Cynthia Conti-Cook
Joshua Carrin
The Legal Aid Society
199 Water Street, 6th Floor
New York, New York 10038
Telephone: (212) 577-3265
Facsimile: (646) 449-6786

Charles S. Sims
William C. Silverman
Sarah E. Sullivan
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000

18

Facsimile: (212) 969-2900
csims@proskauer.com
wsilverman@proskauer.com
ssullivan@proskauer.com

*Attorneys for Plaintiff*