```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RUBEN AN,                                                   :
                                        Plaintiff,          :
                                                            :         16 Civ. 5381 (LGS)
                -against-                                   :
                                                            :         **OPINION AND ORDER**
THE CITY OF NEW YORK,                                       :
                                        Defendant.          :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/02/17

LORNA G. SCHOFIELD, District Judge:

Plaintiff Ruben An was arrested while filming on his cell phone New York Police Department ("NYPD") officers. He sues Defendant City of New York ("the City"), alleging the arrest violated his First Amendment rights and seeking an injunction barring NYPD officers from arresting Plaintiff or others solely for recording police officers who are performing official duties in public. The City moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion is granted.

## I.   BACKGROUND

The following is based on allegations in the Complaint and the two video clips attached to the Complaint. All factual allegations in the Complaint are assumed to be true.

### A.   Plaintiff's Recording Activity and Arrest

Plaintiff "regularly record[s] police officers conducting their official duties in public." He is also involved "with civic groups that organize their members to observe and film police officers in public" and has "taught community trainings on filming police officers."

On July 28, 2014, Plaintiff saw three NYPD officers talking to a man standing on a sidewalk. The officers, Bekim Becaj, Joseph Novellino and Michael Digiacomo, had seen the man lying on the ground, called an ambulance and were waiting for it to arrive. Plaintiff

approached the area and began to film the interaction with his cell phone. Upon seeing that Plaintiff was recording, Officer Becaj told Plaintiff that he was "in the proximity of a police investigation" and ordered him to step back. Plaintiff, who was on the sidewalk, moved away from the officers. Officer Becaj advised Plaintiff that he was blocking the sidewalk and instructed him to step further away. Plaintiff complied with the request. Officer Becaj then attempted to stop Plaintiff from recording the interaction by warning that he would issue Plaintiff "a summons for disorderly conduct if anyone has to go around" Plaintiff. Plaintiff moved away such that he was "almost up against the side of the building" and "out of the way of pedestrian traffic." He continued to film as several pedestrians walked by without needing to adjust their path to avoid Plaintiff.

Officer Becaj told Plaintiff he had seen three people "divert around" him, asked for Plaintiff's identification and ordered him to stop recording. When Plaintiff continued to record, Officer Becaj arrested him with the help of Officers Novellino and Digiacomo. Officer Becaj did not approach another individual who was standing near Plaintiff and observing the interaction but was not recording the officers.

Plaintiff was charged with one count of obstruction of governmental administration, two counts of disorderly conduct and one count of resisting arrest. In July 2015, a jury acquitted Plaintiff on all counts.

Due to the arrest, Plaintiff did not record any police interactions for several months and then began to record "only rarely" until the conclusion of his trial. Plaintiff "gradually resumed" recording after his trial and now records "usually at least two times per month." However, he records less frequently than before his arrest because he "fears future pretextual" arrests and prosecution for recording police officers. His "ongoing filming of public police activity" will

"frequently bring him into contact with police [officers] in scenarios similar to the interaction he observed" the day he was arrested.

### B.     The FINEST Message and Other Alleged Incidents

In 2014, the NYPD circulated a document -- referred to as a FINEST Message -- that addresses "Recording of Police Action by the Public."  It states, "Members of the service are reminded that members of the public are [legally] allowed to record (by video, audio, or photography).  These interactions include arrest and other situations."  It prohibits NYPD officers from "interfer[ing] with a person's use of recording devices to record police interactions" and states that "intentional interference such as blocking or obstructing cameras or ordering the person to cease . . . violates the First Amendment."  The Complaint alleges that the City has "not instituted any training, monitoring, or supervision to ensure that officers comply with" the FINEST Message.  The Complaint similarly alleges no training or supervision has been implemented with respect to a 1977 consent decree by the City, filed in the Southern District of New York under the caption *Black v. Codd*, No. 73 Civ. 5283, which states that "[t]aking photographs" or "[r]emaining in the vicinity of" a stop or arrest does not "constitute[] probable cause for arrest or detention of an onlooker."

The Complaint alleges that NYPD officers routinely arrest individuals who record police activity.  In support of this allegation, it cites six lawsuits filed in the United States District Court for the Eastern and Southern Districts of New York between the years 2012 and 2016 in which the plaintiff alleged that he or she was arrested while recording NYPD officers.  Citing an article in the *New York Times*, the Complaint also alleges that, around 2015, an NYPD officer who had arrested an individual was himself "charged with official misconduct and lying on a criminal complaint" after a surveillance-camera video showed the officer "arresting [the individual] when

3

he borrowed a phone from [a] friend and raised it to film the police as they searched [that individual's] friend." The Complaint alleges that "these examples represent only a small fraction of the actual number of recent instances" in which NYPD officers have interfered with the First Amendment rights of individuals recording police activity.

### C.     Procedural History

Plaintiff filed the Complaint in July 2016, asserting a claim under the First Amendment of the United States Constitution and 42 U.S.C. § 1983. Plaintiff seeks a declaratory judgment that "the City violated [Plaintiff's] rights under the First Amendment" and that the First Amendment protects his "attempted recording of NYPD officers on July 28, 2014." He also seeks an injunction restraining the City and its employees from "punishing or otherwise retaliating against [Plaintiff] or any individual who, without interfering with police activity, records or attempts to record police officers who are performing official duties in a public place." The City moves to dismiss the Complaint under Rules 12(b)(1) and (b)(6). It argues that (1) Plaintiff lacks standing, (2) Plaintiff's prayer for injunctive relief is overly broad and (3) declaratory judgment is improper.

## II.     STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks and citation omitted). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue. In assessing the plaintiff's assertion of standing, we accept as true all material allegations of the complaint and construe the

complaint in favor of the complaining party." *Id.* at 417 (internal quotation marks, citations and alterations omitted).

## III. DISCUSSION

### A. Standing to Seek Injunctive Relief

The Complaint fails to allege facts sufficient to conclude that Plaintiff has standing to seek injunctive relief. "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When seeking injunctive relief against a municipality, a plaintiff has standing only if he can "carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983)). This requires a plaintiff to show "both [1] a likelihood of future harm and [2] the existence of an official policy or its equivalent." *Id.* at 216 (emphasis omitted) (citing *Lyons*, 461 U.S. at 105–106). A future harm is sufficiently likely if "[t]he injury or threat of injury" is "both real and immediate, not conjectural or hypothetical." *Id.* (internal quotation marks omitted).

The official policy requirement for a plaintiff to have standing is critical here. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force

5

of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Further, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" if the failure to train "its employees in a relevant respect . . . amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"[1] *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (noting that municipality liability can be shown where the challenged acts "were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuse").

The Complaint alleges two theories to support the claim that the City has the equivalent of an official policy. First, "[r]egardless of [any] formal policy," the practice of arresting people who record NYPD officers performing their official duties in public is so "widespread" and

---

[1] The parties assume that a plaintiff establishes an official policy or its equivalent for purposes of standing under *Shain* and *Lyons* whenever that plaintiff shows an official policy or custom for purposes of stating a § 1983 claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Some -- but not all -- district courts within this circuit have applied *Monell* and its progeny when evaluating whether a plaintiff has alleged an official policy or its equivalent for purposes of conferring standing. *See, e.g.*, *Battle v. City of New York*, No. 11 Civ. 3599, 2012 WL 112242, at *4 (S.D.N.Y. Jan. 12, 2012) (finding that the plaintiff alleged an official policy or its equivalent based on a "widespread custom or failure to train" (citing *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 439–40 (2d Cir. 2009))); *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (noting that, for purposes of establishing standing, "[a] policy can be inferred from the informal acts or omissions of supervisors" (citing *Turpin v. Mailet*, 619 F.2d 196, 200 (2d Cir. 1980))); *but see MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 597, 601 (S.D.N.Y. 2011) (observing that *Lyons* provides a "much narrower definition of an 'official policy'" than *Monell* and holding that plaintiff lacked standing on a failure to train or supervise claim). This Opinion assumes that *Monell*'s custom or policy requirement informs the analysis of whether a complaint has pleaded an official policy or its equivalent under *Shain* and *Lyons*.

"pervasive" that it constitutes a de facto custom.  Second, the City's failure to train or supervise its police officers "to respect individuals' First Amendment rights" amounts to deliberate indifference.  For the reasons stated below, Plaintiff lacks standing because neither theory as pleaded in the Complaint adequately alleges the equivalent of an official policy.

1. **Persistent and Widespread Practice**

The Complaint fails to allege that the City has a practice that is "so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.  Plaintiff cites six lawsuits filed between 2012 and 2016 and one newspaper report.  But the Complaint fails to allege that any of the six lawsuits, which were filed over a course of four years, resulted in a finding that the NYPD officers violated the plaintiffs' First Amendment rights.  *See, e.g.*, *Calderon v. City of New York*, 138 F. Supp. 3d 593, 612–13 (S.D.N.Y. 2015) ("None of the lawsuits cited resulted in an adjudication or admission of liability and the number of suits [which was 16 over 12 years] does not suggest a pervasive illegal practice."); *Tieman v. City of Newburgh*, No. 13 Civ. 4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) ("Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom.").  The Complaint also cites a newspaper report about an incident in which an officer was charged with official misconduct after arresting a person who was filming him.  These lawsuits and the one newspaper article do not plausibly support an inference of a widespread illegal custom of violating individuals' First Amendment rights at the time of Plaintiff's arrest.  *See Marom v. City of New York*, No. 15 Civ. 2017, 2016 WL 916424, at *21 (S.D.N.Y. Mar. 7, 2016) (holding that

the plaintiff failed to allege a pervasive practice where the complaint failed "to assert which -- if any -- of those lawsuits led to findings of liability against the City for . . . First Amendment retaliatory arrests" and "only one of the referenced cases led to any finding of guilty or liability: a conviction of a police officer for falsifying police records").

### 2. Failure to Train or Supervise

As to the failure to train or supervise theory, the Complaint does not adequately allege the equivalent of an official policy because it does not plead deliberate indifference. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (internal quotation marks omitted). Deliberate indifference under a failure to train or supervise theory has three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992).

"The operative inquiry is whether th[e] facts demonstrate that the policymaker's inaction was the result of conscious choice and not mere negligence." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks omitted). Thus a failure to act "satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can

be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Plaintiff argues that the lawsuits and newspaper article show that the City had notice of "repeated allegations of misconduct, including after the FINEST message was issued, and yet took no corrective action." Plaintiff's argument is unavailing as to both parts -- that the City had notice that the need to act was obvious and that it took no corrective action. First, the six lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the need was obvious. The district court opinions that Plaintiff cites in his brief in which the court held a plaintiff had pleaded deliberate indifference involved significantly more instances of similar misconduct than that alleged in the Complaint. *See Edwards v. City of New York*, No. 14 Civ. 10058, 2015 WL 5052637, at *5 (S.D.N.Y. Aug. 27, 2015) (observing that the plaintiff cites a "litany of sources" regarding alleged brutality by Department of Corrections ("DOC") officers, which included eighteen lawsuits, multiple news articles, a report by the United States Attorney's Office for the Southern District of New York and testimony by DOC Commissioner); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) (finding that the plaintiff plausibly alleged failure to train claim in light of 15 reported state court opinions involving the same constitutional violations that the plaintiff allegedly suffered). Second, the Complaint is insufficient in alleging that the City, once on notice, failed to take corrective action required to show deliberate indifference. As to the incident cited in the news article, the officer was charged with a crime after the arrest. As to the other incidents, the Complaint does not

allege any specific facts regarding whether the City investigated or disciplined the officers that arrested Plaintiff or the officers in any of the six lawsuits cited in the Complaint.[2] *See Walker v. City of New York*, No. 14 Civ. 808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (noting that "[e]ven if Plaintiff had shown an obvious need for more or better supervision by listing the numerous lawsuits and complaints, he has not stated any facts to show that the City has acted with deliberate indifference" where "he does not specifically claim that the City failed to investigate the list of lawsuits"); *Tieman*, 2015 WL 1379652, at *21 ("[A]n allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference . . . .").

In sum, because the Complaint does not adequately allege the existence of an official policy or its equivalent, Plaintiff lacks standing to pursue injunctive relief against the City. *See Shain*, 356 F.3d at 216.

### B. Standing to Seek Declaratory Relief

The Complaint fails to allege Plaintiff has standing to seek declaratory relief. Declaratory judgment, like an injunction, is a form of prospective relief that requires a plaintiff to show "a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *Lyons*, 461 U.S. at 111); *see also Los Angeles Cty. v. Humphries*, 562 U.S. 29, 31 (2010) (characterizing a "declaratory judgment" as "prospective relief"). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement but must show a

---

[2] Plaintiff argues in his memorandum of law that the NYPD did not investigate or discipline Officer Becaj following Plaintiff's arrest. The Complaint, however, contains no such allegations. Thus Plaintiff's assertion is not properly considered on this motion to dismiss. *See, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 304 (S.D.N.Y. 2015) (noting that facts asserted in a memorandum of law but not the complaint are not "are not properly considered by the Court in deciding" a motion to dismiss).

likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). A plaintiff therefore must show "an official policy or its equivalent." *See Shain*, 356 F.3d at 216; *see also Peck v. Baldwinsville Cent. Sch. Dist.,* 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (holding that a plaintiff lacks standing for declaratory relief where "[h]e points to no policy or custom (or an equivalent) suggesting that any defendant regularly violates students' free speech rights" (citing *Shain*, 356 F.3d at 216)). Because the Complaint fails to allege the existence of an official policy or its equivalent for the reasons stated above, Plaintiff does not have standing to assert a claim for declaratory judgment.

Accordingly, his claim for declaratory judgment is dismissed for lack of standing. Because the issue of whether the Complaint has adequately alleged an official policy or its equivalent is dispositive with respect to Plaintiff's claims for both declaratory and injunctive relief, the City's other arguments are not addressed.

## IV.   CONCLUSION

For the foregoing reasons, the City's motion to dismiss for lack of subject matter jurisdiction is GRANTED and the Complaint is DISMISSED without prejudice. Any motion for leave to amend the Complaint must be filed within three (3) weeks of the date of this Order with a copy of the proposed amended pleading.

The Clerk of Court is directed to close the motion at Dkt. No. 23.

Dated:  February 2, 2017
       New York, NY

                                LORNA G. SCHOFIELD
                            UNITED STATES DISTRICT JUDGE