**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RUBEN AN,

*Plaintiff,*

v.

THE CITY OF NEW YORK,

*Defendant.*

Civil Case No.: 16 Civ. 05381 (LGS)

*Document Electronically Filed*

**AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Ruben An ("An"), by the undersigned attorneys, brings this action against the
City of New York (the "City"), alleging as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is a civil rights action challenging the constitutionality of the New York City
Police Department's ("NYPD") widespread practice and custom of interfering with and deterring
the exercise of the First Amendment right of individuals to film, photograph, videotape, or
otherwise record (collectively, "record") NYPD officers performing their official duties in public
places. This lawsuit challenges the retaliatory measures taken by NYPD officers against the
Plaintiff, Ruben An, for attempting to record police officers on July 28, 2014, while the officers
were interacting with another man on a sidewalk on Lafayette Street and East Eighth Street in
Manhattan, New York.

2.      Individuals have a right under the First Amendment of the Constitution to record
police officers in public spaces acting in their official capacities. The NYPD maintains a
widespread practice and custom of arresting, threatening to arrest, or otherwise interfering with

the exercise of the right to record police officers in public places. This widespread practice infringes the First Amendment rights of individuals recording or attempting to record police officers performing their official duties.

3.      This action is brought by Plaintiff Ruben An pursuant to the First Amendment of the United States Constitution and 42 U.S.C. § 1983. The practices of the NYPD violate Mr. An's First Amendment rights.

4.      The City's infringement of Plaintiff's rights was not an anomaly. Regardless of formal policy, the NYPD maintains a widespread practice of arresting or otherwise interfering with individuals who record or attempt to record NYPD officers performing their official duties in public places. Given this pattern of NYPD conduct, Mr. An faces a risk of suffering future unconstitutional infringement of his First Amendment rights whenever he attempts to record police officers.

5.      Plaintiff seeks declaratory and injunctive relief to ensure that the NYPD's widespread practice of interfering with individuals who record or attempt to record NYPD officers performing their official duties in public places does not violate the First Amendment to the United States Constitution, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. § 1983 and the First Amendment to the Constitution of the United States. Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), as this is a civil action arising under the Constitution and laws of the United States. This court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper here pursuant to 28 U.S.C. § 1391(a), (b), and (c) because all of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

8.      Plaintiff brings this action to vindicate the public interest, and the resolution of this case will directly affect the rights of all New Yorkers. Therefore, to the extent that the notice of claim requirement of N.Y. Gen. Mun. Law §§ 50-e and 50-i would otherwise apply to any of the claims below, Plaintiff is not obligated to provide notice to Defendant because this case falls within the public interest exception to the notice of claim requirement.

## PARTIES

9.      Plaintiff Ruben An is a 24-year-old man who at all times relevant herein has been a citizen of the United States residing in Queens County, State of New York.

10.     Defendant City of New York is a municipal entity created and organized under the laws of the State of New York. The City is authorized by law to maintain a police department, which acts as its agent for purposes of law enforcement and for which the City is responsible. The City is responsible for the policy, practice, supervision, implementation, and conduct of all New York Police Department matters and is responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel. The City is responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

## STATEMENT OF FACTS

### The Arrest and Detention of Ruben An

11.     On July 28, 2014, between approximately 6:00 p.m. and 6:30 p.m., NYPD officers Bekim Becaj, Joseph Novellino, and Michael Digiacomo observed a man lying on the ground next to a phone booth on the sidewalk on East 8th Street and Lafayette Street in

Manhattan, New York. The officers stopped their vehicle, got out of the car, obtained the man's information, and called an ambulance. The officers waited with the man for the ambulance to arrive. (Ex. A at 25:00 – 27:50).

12.     Plaintiff Ruben An was walking in the vicinity of Lafayette Street and East 8th Street in Manhattan, New York when he observed the three police officers standing next to the phone booth, interacting with the man. In particular, Mr. An observed the officers appearing to question the man about an object he was holding. Mr. An approached the area and, standing on the curb, began to film the interaction using his cellphone. (Ex. A at 30:40 – 31:50).

13.     The entire incident described above and below was captured in two separate recordings. The management company of the building where the incident occurred, Vornado Realty, maintains a surveillance camera that records the sidewalk on Lafayette Street and East 8th Street. That camera captured the entire interaction between Mr. An and the police officers on July 28, 2014. The surveillance video of the incident is attached to this Amended Complaint as **Exhibit A**. Mr. An also recorded a portion of his interaction with the officers on his cellular phone. The video of the incident taken by Mr. An using his cellphone is attached as **Exhibit B**. Officer Becaj's actions were intended to deter and hamper Mr. An's attempt to record the events, in an exercise of his First Amendment rights.

14.     Upon noticing that Mr. An had begun to film the interaction, Officer Becaj approached Mr. An and informed Mr. An that he was "in the proximity of a police investigation" and ordered him to step back. (Ex. A at 31:04; Ex. B at 00:17).

15.     Mr. An moved away from the officers, and Officer Becaj advised him to step even further away, saying that he was blocking the sidewalk. (Ex. B at 00:17 – 00:21). Mr. An again

complied with the request and moved further away, toward the side of the building. (Ex. A at 31:10; Ex. B at 00:21 – 00:26).

16.     Officer Becaj attempted to make Mr. An stop recording the officers by informing Mr. An that he was going to "wait until people come by and then you'll get issued a summons for disorderly conduct if anyone has to go around." (Ex. A at 31:10 – 31:25; Ex. B at 00:28 – 00:50). In response to Officer Becaj's threat, Mr. An moved away from the officers again, this time backing away until he was standing almost up against the side of the building, out of the way of pedestrian traffic. (Ex. A at 31:25; Ex. B at 00:38).

17.     As this exchange took place and Mr. An continued to record the interaction, several pedestrians walked by without needing to adjust their path to divert around Mr. An. (Ex. A at 31:25 – 31:44). One woman walking by can be seen apparently ducking her head under the path of Mr. An's cellphone camera. (Ex. A at 31:45; Ex. B at 1:01).

18.     Officer Becaj walked toward Mr. An, informed Mr. An that he "just watched three people divert around you," and asked to see Mr. An's identification. When Mr. An did not immediately produce identification, Officer Becaj ordered Mr. An to put his phone down and stop filming and produce identification. (Ex. B at 1:06 – 1:14). As Officer Becaj approached Mr. An, Officer Becaj walked into the middle of the sidewalk, causing several pedestrians to divert around him, though none had to divert around Mr. An. (Ex. A at 31:50 – 32:00).

19.     When Mr. An did not put his cellphone down and stop recording, Officer Becaj grabbed Mr. An, twisted Mr. An's arm behind his back, and forcefully pushed him against the building wall. (Ex. A at 32:30 – 33:00; Ex B. at 1:31 – 1:41). After Officer Becaj had forced Mr. An against the building, Officers Novellino and Digiacomo stopped the conversation they were having with the man by the phone booth to participate in Mr. An's arrest.

20.     Officer Becaj grabbed Mr. An's arm, causing Mr. An to drop his cellphone, which stopped recording. (Ex. B at 1:58). Officer Becaj confiscated the cellphone. (Ex. A at 33:30).

21.     The officers handcuffed Mr. An and placed him in their vehicle. (Ex. A at 32:30 – 33:40).

22.     Throughout Mr. An's interaction with Officer Becaj, several other individuals were standing near Mr. An. None of the other individuals were filming the police officers, and Officer Becaj did not approach the other individuals, and did not accuse anyone standing near Mr. An of obstructing pedestrians on the sidewalk. At one point, another individual stopped to observe the interaction and stood along the same wall as Mr. An. (Ex. A at 32:20). Officer Becaj did not approach this individual, ask him to move, or accuse him of obstructing the sidewalk. Although several individuals were watching this interaction, no crowd formed.[1]

23.     Mr. An was charged on July 28, 2014, with obstruction of governmental administration, two counts of disorderly conduct in violation of New York Penal Law 240.20 and resisting arrest in violation of New York Penal Law 205.30. Mr. An was held in police custody for approximately 15 hours.[2]

24.     A jury trial occurred July 7-9, 2015, before Justice Gilbert Hong. The jury returned a not-guilty verdict on all counts.

25.     Officers Becaj, Novellino, and Digiacomo, employed by and acting on behalf of the Defendant, harmed Mr. An by interfering with his exercise of his First Amendment rights.

---

[1] Officer Becaj later claimed that a crowd had formed and that he had been required to perform crowd control, but both the videos refute that claim.

[2] After viewing the surveillance video, the assistant district attorney dismissed obstruction of governmental administration and one count of disorderly conduct.

The complained of conduct therefore chilled the exercise of Mr. An's constitutional rights. Furthermore, none of the officers were ever disciplined for their treatment of Mr. An.

26.     Absent declaratory and injunctive relief, Mr. An faces a high risk of future harm. For over two years, Mr. An has regularly recorded police officers conducting their official duties in public. He would like to continue doing so in the exercise of his First Amendment rights.

27.     Mr. An has at least once contacted an individual whose interaction with police officers he filmed to offer to provide the individual with his recording. Mr. An maintains involvement with civic groups that organize their members to observe and film police officers in public. He has participated in and taught community trainings on filming police officers. His ongoing filming of public police activity will therefore frequently bring him into contact with police officers in scenarios similar to the interaction he observed and attempted to record on July 28, 2014, which led the NYPD to violate his First Amendment rights.

28.     Chastened, worried, and deterred by the City's response, Mr. An did not record any police interactions for several months after his arrest and recorded only rarely until the conclusion of his trial, which has resulted in acquittal on all charges.

29.     Since the conclusion of the trial, Mr. An has gradually resumed filming public police activity, usually at least two times per month, but less frequently than previously because he fears future pretextual arrests and prosecutions as a result of his recording of police officers. In spite of these concerns, and the anxiety he experiences while filming, Mr. An does continue to record police activity and will continue to do so going forward, as he believes that recording police officers and distributing his videos personally or via social media platforms to other members of the community is essential to ensuring that NYPD officers are held accountable for their conduct, and useful in educating the public about police misconduct.

7

**The NYPD's Practice and Custom of Violating the First Amendment Rights of Individuals Recording or Attempting to Record Police Officers**

30.     Cellphones have become nearly ubiquitous among American adults. According to the Pew Internet & American Life Project, as of summer 2015, 92% of adults in the United States own a cellphone, and 68% own a smartphone. Smartphones contain integrated cameras capable of photography, audio, and video recording, thus over two-third of the adult population in the United States carries a video recording device with them wherever they go.

31.     Some members of the public, including Plaintiff, use their smartphones to take photographs, audio, and/or video recordings of police officers to document and hold officers responsible for their conduct. Consequently, in recent years, in conjunction with the rise of cellphone and smartphone usage, there have been a number of incidents of police misconduct that have been recorded by individuals using their cellphones. There have additionally been several incidents in which cities and police departments have faced lawsuits challenging the conduct of police officers who have interfered with individuals who, exercising their First Amendment rights, recorded or attempted to record police activity.

32.     The City and the NYPD maintain a widespread practice and custom of permitting NYPD officers to interfere with the First Amendment rights of individuals who, without interfering with police activity, record or attempt to record such activity in public places. This interference includes arresting individuals recording or attempting to record police activity, threatening to arrest such individuals, prosecuting such individuals on pretextual charges as punishment for recording police activity, and otherwise preventing or hindering individuals from recording police activity.  At the time of and since Mr. An's arrest, the NYPD already had a persistent pattern of arresting individuals exercising their First Amendment rights by filming

police officers performing their official duties in public extending back until at least 2004. Some examples of this include:

    a.      According to a lawsuit filed in the Southern District of New York,[3] NYPD officers, including Officer Steven Rodriguez, arrested Debra Goodman for filming their interaction with a citizen requiring medical attention. Ms. Goodman took a cellphone video in 2013 on the Upper West Side of Manhattan as emergency medical technicians provided aid to a woman in a wheelchair and police officers stood nearby. As Ms. Goodman filmed, an officer began recording her with his cellphone. The officer then confronted Ms. Goodman and demanded that she produce identification. When she refused to do so, she was placed under arrest. The New York County District Attorney's Office ultimately dismissed all charges against Ms. Goodman. The City settled the lawsuit with Ms. Goodman for an undisclosed amount.

    b.      According to a lawsuit filed in the Eastern District of New York,[4] on June 5, 2012, Hadiyah Charles was arrested for using her smartphone to record NYPD officers Pamela Benites and Raymond Williams as they questioned and frisked three men. On that day, in the Bedford-Stuyvesant neighborhood in Brooklyn, when Ms. Charles saw the officers questioning and frisking the men, she approached them and asked what was happening. Officer Williams replied that it was "police business." Subsequently, Officer Benites asked Ms. Charles to step away from the scene. Ms. Charles complied with the request and then began recording the incident with her smartphone. Even though Ms. Charles was already a reasonable distance away, Officer Benites tried to stop her from

---

[3] *Goodman v. City of New York*, No. 14 CV 05261, (S.D.N.Y. filed July 15, 2014).
[4] *Charles v. City of New York*, No. 12 CV 06180 (E.D.N.Y. filed Dec. 17, 2012).

9

recording by repeatedly asking her to step further away. At no time was Ms. Charles interfering with the police officers' actions. After she had been recording for a short time, Officer Benites shoved Ms. Charles when Ms. Charles told the supervising officer that she wished to file a formal complaint; she was handcuffed and placed in a police van. Ms. Charles was charged with disorderly conduct. Ms. Charles filed a lawsuit on December 17, 2012 that includes a claim for violation of her First Amendment rights that is ongoing in the United States District Court for the Eastern District of New York.

      c.      According to a lawsuit filed in the Southern District of New York,[5] NYPD officers in the East Village arrested Robert Carnevale and Carole Dale for recording the officers, who were removing locked bicycles from the scene. Mr. Carnevale recorded the entire interaction with the police up until the time that he was detained, when he handed his video camera to Ms. Dale. Ms. Dale eventually handed the camera to Mr. Carnevale's common law spouse Carolyn Dorn. Lieutenant Corcoran expressed his displeasure at the three individuals for recording the interaction, at one point stating to Mr. Carnevale: "Keep it up.  I'm not playing with you. You are harassing me in the street. I had enough. You got my name. I did you a favor, now I had enough. I'm going to lock you up for disorderly conduct." Lieutenant Corcoran ordered Officer Torres to arrest Mr. Carnevale and Ms. Dale and to charge them with disorderly conduct, even though neither had interfered in any way with the police operation. Mr. Carnevale and Ms. Dale were incarcerated for 24 hours prior to being released. The City of New York paid Mr. Carnevale and Ms. Dale each $20,001 to settle the lawsuit.

---

[5] *Carnevale v. The City of New York*, No. 08 CV 09993 (S.D.N.Y. filed Nov. 11, 2008).

d.      According to a lawsuit filed in the Southern District of New York,[6]

Douglas Higginbotham, a freelance video-journalist for TV New Zealand, was arrested

on November 15, 2011 for filming police activity associated with an Occupy Wall Street

protest. Mr. Higginbotham was taping the protest from atop a telephone booth when an

NYPD officer ordered him to climb down. Mr. Higginbotham's press credentials were

clearly visible on a chain around his neck. Mr. Higginbotham was unable to immediately

comply because of the crowd around the telephone both. As Mr. Higginbotham began to

climb down, Sergeant Cristoph Tomlinson and Officer Curtis Sylvester pulled on his

legs, causing him to fall, and then placed Mr. Higginbotham in handcuffs for three hours

and charged him with disorderly conduct. This charge was later dismissed, and Mr.

Higginbotham subsequently sued the City for violating his civil rights. This case remains

ongoing as of the date of this Amended Complaint.

e.      According to a lawsuit filed in the Southern District of New York,[7] citizen

reporters Paul Sullivan, John Knefel, Timothy Fitzgerald, and Justin Wedes were arrested

by NYPD officers while documenting the police response to an Occupy Wall Street

protest. Mr. Knefel was arrested after an NYPD officer refused to let him record the

police response to the protest because he did not have NYPD issued press credentials.

Mr. Wedes was grabbed, pulled to the ground and arrested without warning as he

recorded police interactions from a reasonable distance. Mr. Wedes was held for 40 hours

prior to being arraigned. Later, on March 15, 2012, NYPD Deputy Inspector Edward

Winski threatened Mr. Wedes with arrest for documenting police action. Like Mr.

---

[6] *Higginbotham v. City of New York*, No. 14 CV 08549 (S.D.N.Y. filed Oct. 27, 2014).
[7] *Rodriguez v. Winski*, No. 12 CV 03389 (S.D.N.Y. filed Apr. 30, 2012).

Wedes, Mr. Sullivan was grabbed, pulled to the ground and arrested without warning as he recorded the police response to the protest. Mr. Sullivan sustained nerve damage to his hand as a result of the arrest. Mr. Wedes settled with the City in January 2017 for an undisclosed amount.

      f.      According to a lawsuit filed in the Eastern District of New York,[8] film student Justin Thomas was arrested on April 19, 2013 by NYPD officers for filming the exterior of the 72nd Precinct for his senior class video project. Sergeant Viet Cao approached Mr. Thomas as he was filming and demanded that he stop filming. A friend of Mr. Thomas's was filming the conversation, and Sergeant Cao demanded that the friend also stop filming. The friend continued to film and stated that he was not interfering. Sergeant Cao grabbed Mr. Thomas's upper arm and jerked him forward, stating that he was under arrest. Mr. Thomas did not resist. Another officer grabbed the video camera, ended the recording and removed a memory card from the camera. Mr. Thomas was handcuffed and led into the precinct where he received a desk appearance ticket. When Mr. Thomas went to court for the ticket, it was determined that no charges were ever filed against him, and Mr. Thomas subsequently sued the City for a violation of his civil rights. The City settled this matter with Mr. Thomas for $15,000.

      g.      According to a case filed in the Southern District of New York,[9] Lumumba Bandele, Djibril Toure, and David Floyd were arrested by NYPD officers on February 9, 2005 for videotaping the arrest of two individuals in Bedford-Stuyvesant, Brooklyn.  Mr. Bandele, Mr. Toure, and Mr. Floyd were trained by a community

---

[8] *Thomas v. City of New York*, No. 13 CV 06139 (E.D.N.Y. filed Nov. 6, 2013).
[9] *Bandele v. The City of New York*, No. 07 CV 03339 (S.D.N.Y. filed Apr. 26, 2007).

organizing program, CopWatch, on how to lawfully record police activity. While recording the arrest, Mr. Bandele, Mr. Toure and Mr. Floyd stood on a public sidewalk and at all times remained at a lawful distance from the arresting officers. After the arrestees were secured, NYPD officer Thomas Stevens approached Mr. Bandele, Mr. Toure and Mr. Floyd and ordered them to leave the area. Mr. Bandele, Mr. Toure and Mr. Floyd continued to videotape. In retaliation, Officer Stevens pushed Mr. Bandele and Mr. Floyd, knocking their video camera and Mr. Floyd to the ground.  As a result, the camera broke. Officer Stevens and two other NYPD officers proceeded to arrest Mr. Bandele, Mr. Toure and Mr. Floyd. The two unnamed officers struck each man as they were placed into custody. Mr. Bandele, Mr. Toure and Mr. Floyd did not resist arrest.  Mr. Bandele, Mr. Toure and Mr. Floyd were initially charged with resisting arrest, disorderly conduct and obstruction of governmental administration. The disorderly conduct charge was subsequently dropped. Mr. Toure was also charged with assault in the third degree. Mr. Bandele, Mr. Toure, and Mr. Floyd were held in jail for approximately 24 hours after their arrests. The District Attorney of Kings County eventually dismissed all charges with prejudice, but not before Mr. Bandele, Mr. Toure and Mr. Floyd were each required to appear in court on more than ten occasions. Mr. Bandele, Mr. Toure, and Mr. Floyd subsequently sued the City for violating their civil rights. The City paid Mr. Bandele, Mr. Toure and Mr. Floyd each $15,000 to settle the lawsuit.

h.      According to a lawsuit filed in the Southern District of New York,[10] Dennis Flores and Anna Mesa were arrested by NYPD officers at a public Afro-Dominican event in the Bronx on September 29, 2008. At around 8pm on the day in

---

[10] *Mesa v. The City of New York*, No. 09 CV 00464 (S.D.N.Y. Dec. 23, 2009).

question, the NYPD attempted to disperse the public crowd, including with batons drawn

and in some instances pushing and yelling at spectators. After Mr. Flores and Ms. Mesa

witnessed an officer push an elderly woman and threaten to arrest her, Mr. Flores began

photographing aggressive officers. Officer Aida Dolan yelled at Mr. Flores that it was

illegal to photograph police officers, and she threatened to arrest Mr. Flores and

confiscate and break the camera. Officer Dolan ordered other officers to place Mr. Flores

under arrest. Mr. Flores passed the camera to a student spectator and began walking

backwards with hands raised. A group of 15 police officers pushed Mr. Flores into a store

glass window and subsequently handcuffed him. During this time, Ms. Mesa took the

camera from the student spectator, and Officer Dolan ordered Ms. Mesa to hand over the

camera. Officer Dolan tried to grab the camera from Ms. Mesa. Another spectator

bumped into Ms. Mesa, causing her to fall into Officer Dolan, who responded by calling

for her arrest. Five officers surrounded Ms. Mesa and forced her to the floor. Ms. Mesa

was detained for 24 hours and charged with obstructing governmental administration in

the second degree, resisting arrest, and disorderly conduct. During Ms. Mesa's first trial,

all charges were dismissed. A second trial was held, and again, Ms. Mesa was acquitted

of all charges. Mr. Flores was charged with disorderly conduct, and he was also acquitted

at trial. The City settled with Mr. Flores for $42,500.

      i.      According to a lawsuit filed in the Southern District of New York,[11] Justin

Sullivan was arrested by MTA police on or around January 12, 2012 for filming an

Occupy Wall Street protest at Grand Central Station.  MTA Police Officer Omeeta

Lakeram ordered other officers present to take Mr. Sullivan's camera. Mr. Sullivan was

---

[11] *Sullivan v. Lakeram,* No. 13 CV 07677 (S.D.N.Y. filed Oct. 28, 2013).

subjected to excessive force during the arrest. Mr. Sullivan was initially released from custody with multiple summonses. When he returned to the MTA Police Precinct at Grand Central Station to ask for his video camera, Mr. Sullivan was re-arrested, held for 24 hours and received additional summonses. Mr. Sullivan's still camera, video camera, and data chips were never returned. A witness reported that she observed an officer instruct another officer to break the camera. This case is pending trial.

       j.        According to a lawsuit filed in the Southern District of New York,[12] John Runnells was arrested by NYPD officers on April 27, 2012 for filming at a police traffic checkpoint. On the night in question, Mr. Runnells was using his digital camera to film a police traffic checkpoint in the Bronx when he was seized by Officer Krystal Paduani and another officer.  The officers took Mr. Runnells's camera and placed him in handcuffs. Mr. Runnells was taken to a police van and charged with disorderly conduct. The charge was later dismissed. The officers returned Mr. Runnells's camera, but he found that the video that he had taken of the officers had been deleted. Mr. Runnells resumed filming and began asking other NYPD officers in the area for the names of his arresting officers. Mr. Runnells was unable to obtain an answer and prepared to leave.  At this time, Mr. Runnells was accosted by multiple officers who pushed him against a mailbox, handcuffed him and seized his camera. The following day, Mr. Runnells was arraigned on charges of resisting arrest, obstructing governmental administration, two counts of harassment and disorderly conduct. When Mr. Runnells got his camera back on April 30, 2012, the footage that he had filmed on April 27 had all been deleted. Mr. Runnells took the memory card from his camera to a data recovery service, which was able to determine

---

[12] *Runnells v. City of New York*, No. 13 CV 02904 (S.D.N.Y. filed Apr. 30, 2013).

that seven files had been deleted on April 27. Mr. Runnells sued the City for violating his civil rights, and the lawsuit was eventually settled for $150,000.

      k.      According to a lawsuit filed in the Southern District of New York,[13] Santos Bobet was arrest by NYPD officers Kelvin Prado, Mendez and Jho Rodriguez on September 28, 2013 for recording the officers handcuffing another individual. When Mr. Bobet began videotaping the incident, which occurred by the Whitlock Avenue subway station, Officer Mendez told Mr. Bobet that he needed to pay his fare or stop videotaping the encounter. Mr. Bobet paid the fare and continued recording. Officer Mendez then grabbed the video camera from Mr. Bobet and handcuffed him. The footage from the camera was deleted. Mr. Bobet was charged with obstructing governmental administration, but the charge was later dismissed. Mr. Bobet subsequently sued the City for violating his civil rights, and the case ultimately settled for $22,000.

      l.      According to a lawsuit filed in the Eastern District of New York,[14] Rahul Saksena was arrested by NYPD officers on June 5, 2013 for videotaping approximately 14 NYPD officers questioning a man in Brooklyn. While Mr. Saksena was videotaping the interaction, one of the officers told him to step back. Mr. Saksena complied, but he did not stop filming. Several officers stood behind Mr. Saksena and appeared to hold up their phones as if videotaping him. One of the officers asked Mr. Saksena, "How does it feel to be filmed?" As Mr. Saksena began to turn around, Officer Souffrance grabbed his arm and slammed him into a nearby fence.  Mr. Saksena suffered pain and bruising. Mr. Saksena was handcuffed and transported to a precinct, where he was issued a summons

---

[13] *Bobet v. The City of New York*, No. 14 CV 01396 (S.D.N.Y. filed Mar. 3, 2014).
[14] *Saksena v City of New York*, No. 14 CV 05129 (E.D.N.Y. filed Aug. 29, 2014).

for disorderly conduct. The summons was dismissed after Mr. Saksena made two appearances in court. Mr. Saksena sued the City for violating his civil rights, and the lawsuit ultimately settled for $7,500.

m.     According to a lawsuit filed in the Southern District of New York,[15] Wajid Kahlil al-Qadaffi was arrested by NYPD officers Colon and Thomas on April 2, 2014 in retaliation for al-Qadaffi filming the officers as they confronted and seized two young black men on a public sidewalk in the Bronx. As Mr. al-Qadaffi filmed the interaction, a police vehicle with two officers stopped near Mr. al-Qaddafi. Officers Colon and Thomas exited the vehicle and ordered Mr. al-Qadaffi to stop filming. Mr. Al-Qadaffi asked the officers why he was being ordered to stop filming. Officer Colon said, "Turn it off and I'll tell you." Mr. Al-Qadaffi stopped filming. The officers searched him and told him that he would be arrested if he tried to leave the area. Officer Thomas grabbed Mr. al-Qadaffi's cellphone. The officers unsuccessfully tried to coerce employees of a nearby restaurant into saying that Mr. al-Qadaffi had refused their request to leave the area. Officer Colon told Mr. al-Qadaffi to leave the area and threatened to arrest him, send him to Riker's Island and confiscate his possessions if he did not do so. Fearing that he might be sent to Riker's Island, Mr. al-Qadaffi complied and left the area. Mr. al-Qadaffi later sued the City for violating his civil rights, and settled the lawsuit for $7,500.

n.     According to a lawsuit filed in the Eastern District of New York,[16] on November 1, 2013, NYPD officers arrested Raymond Perez after he attempted to record officers who were assaulting his friend. Mr. Perez and a group of friends were lawfully

---

[15] *Al-Qadaffi v. The City of New York*, No. 15 CV 00052 (S.D.N.Y. filed Jan. 6, 2015).
[16] *Perez v. The City of New Yorkl*, No. 16 CV 02368 (E.D.N.Y. filed May 10, 2016).

walking on the street when, without warning, NYPD officers began assaulting Mr.

Perez's friend. Mr. Perez attempted to record the assault using his cellphone, but

Lieutenant Lanier Glenn told him to put his phone away. Mr. Perez, frightened at the

situation, put his phone away. The lieutenant struck Mr. Perez, kicking his legs out from

underneath him and pushing him to the ground. Mr. Perez was arrested and charged with

obstructing governmental administration and resisting arrest. The charges against Mr.

Perez were dismissed. Mr. Perez's civil rights case against the City settled for an

undisclosed amount.

      o.      According to a lawsuit filed in the Southern District of New York,[17]

Manuel Fana was arrested after filming the arrests of three other individuals in the

vicinity of Aqueduct Avenue and West 182nd Street in Bronx County,New York on July

18, 2014. Mr. Fana observed NYPD officers Thomas Demikiw, Sean Lynch and

Alejandro Olan placing three individuals under arrest after a traffic stop, and Mr. Fana

began filming the arrests on his cellphone. The officers ordered Mr. Fana to move behind

a fence, and Mr. Fana complied. At this point, the officers approached Mr. Fana, placed

him in handcuffs and transported him to a nearby precinct.  Mr. Fana was charged with

obstructing governmental administration in the second degree and disorderly conduct.

After Mr. Fana made three court appearances in connection with these charges, the

proceedings against him were dismissed. Mr. Fana sued the City for violating his civil

rights during this incident, and that lawsuit remains ongoing.

---

[17] *Fana v. The City of New York*, No. 15 CV 08114 (S.D.N.Y. filed Oct. 15, 2015).

p.      According to a lawsuit filed in the Southern District of New York,[18] Walter Avila was arrested on January 12, 2013 after videotaping two NYPD officers ticketing his car after he double-parked in front of a Chase Bank located at 103 East 125th St. in Manhattan.  As Mr. Avila filmed, NYPD Officer Robert Regent asked him if he intended to post the video on YouTube, at which point Mr. Avila asked for the officer's badge number. In response, Officer Regent grabbed Mr. Avila by the shirt, shoved him into the side of his car and began to reach for his gun. Officer Christopher Mitchell then punched Mr. Avila in the right eye. Officer Regent tried to physically take the cellphone out of Mr. Avila's hand while Officer Mitchell continued to punch Mr. Avila in the head and face. Officer Regent continued trying to take the phone, and Officer Mitchell pounded Mr. Avila's head into the pavement and kicked him. Mr. Avila lost consciousness as a result of the beating, and Officer Regent was then able to take the cellphone from his hands. The officers never communicated to Mr. Avila that he was under arrest. Mr. Avila never saw his phone again; it was never logged into evidence, and the officers denied its existence. When Mr. Avila regained consciousness, he was in handcuffs, and he was beaten again by a group of NYPD officers. After the beating, Officer Regent punched Mr. Avila in the head, again rendering him unconscious. Mr. Avila was taken to the hospital to treat his injuries. Mr. Avila was charged with two counts of assault in the third degree, resisting arrest, attempted assault in the third degree, and harassment in the second degree. Mr. Avila spent 20 hours in custody before being released, after which he needed to seek further medical attention. Mr. Avila sued the City for violating his civil rights during this incident, and the lawsuit settled for $150,000.

---

[18] *Avila v. City of New York*, 15 CV 09193 (S.D.N.Y. filed Nov. 23, 2015).

q.      According to a lawsuit filed in the Southern District of New York,[19]

Tiesheia Young was arrested after attempting to film an interaction between NYPD

officers, her boyfriend, and herself on July 24, 2013 at 1705 Anthony Avenue in the

Bronx.  Ms. Young was asked for her identification by NYPD Officer Thomas Adams,

and she complied with the request. Officer Adams then walked toward her home, and

fearing that he would enter her home without permission, Ms. Young took out her

cellphone and began filming Officer Adams. She stood at a distance to ensure that she did

not interfere with Officer Adams' performance of his duties. As soon as Ms. Young took

out her phone, Officer Adams yelled at her to give him her phone, which she refused to

do. Officer Adams then arrested Ms. Young, placed her in handcuffs, and transported her

to the 44th precinct. Ms. Young was charged with obstruction of governmental

administration. Ms. Young lost her job as a result of the arrest and charges against her.

After fighting the charges against her in court for three years, all charges against Ms.

Young were eventually dismissed. Ms. Young sued the City for violating her civil rights

during this incident, and that lawsuit remains ongoing.

r.      According to a lawsuit filed in the Eastern District of New York,[20]

Fitzgerald Brown was arrested on June 6, 2012 after recording NYPD officers arresting

an individual in the vicinity of New Lots Avenue and Vermont Avenue in Brooklyn.

Approximately an hour after recording the arrest, Mr. Brown was standing in front of his

home at 441 New Lots Avenue when NYPD Officer Jose Sandoval and a second NYPD

officer, both of whom had participated in the earlier arrest that Mr. Brown had recorded,

---

[19] *Young v. City of New York*, 16 CV 01695 (S.D.N.Y. filed Mar. 5, 2016).
[20] *Brown v. City of New York*, 13 CV 04946 (E.D.N.Y. filed Sep. 4, 2013).

pulled up to Mr. Brown's home, grabbed Mr. Brown, pushed him against a vehicle and handcuffed him. Mr. Brown was taken to the 75th Precinct where he was held until his arraignment the following day. All charges against Mr. Brown were later dismissed. Mr. Brown sued the City for violating his civil rights during this incident, and the City paid Mr. Brown $20,000 to settle this lawsuit.

       s.       According to a lawsuit filed in the Southern District of New York,[21] Alexandria Reel was arrested on December 27, 2013 near the intersection of 163rd Street and Fox Street in the Bronx when she, as the passenger in a car that was pulled over by NYPD officers, recorded the encounter. One of the NYPD officers smacked the phone out of Ms. Reel's hand and told her that she was not allowed to record them. The officers then arrested both the driver and Ms. Reel. Ms. Reel was charged with resisting arrest, obstruction of governmental administration and harassment. The charges were later dismissed. Ms. Reel sued the City for violating her civil rights during this incident, and that lawsuit remains ongoing.

       t.       According to a lawsuit filed in the Eastern District of New York,[22] NYPD officers arrested Tania McCarthur for filming the officers as they searched the basement apartment of her home in July 2013 in Brooklyn. The officers forcibly grabbed her and tossed her phone to the ground before placing her under arrest. The charges against Ms. McCarthur were later dismissed. This case was settled for $40,000.

---

[21] *Reel v. City of New York*, No. 16 CV 07248 (S.D.N.Y. filed Sep. 16, 2016).
[22] *Devore v. City of New York*, No. 15 CV 00021 (E.D.N.Y. filed Jan. 5, 2015).

u.      According to a lawsuit filed in the Eastern District of New York,[23] NYPD officers arrested Ramsey Baines for filming their interaction with a citizen who was apprehended and arrested on the street on July 16, 2014 in Brooklyn. As Mr. Baines began to walk away and make a phone call, one of the officers threw him to the ground. Subsequently, officers, including Officer Jonathan Thomas, placed Mr. Baines under arrest. Ultimately the case was adjourned in contemplation of dismissal. This case was settled for $12,501.

v.      According to a lawsuit filed in the Eastern District of New York,[24] NYPD officers arrested Nimra Khawaja for filming their interaction with her family, one member of which had been shot in the chest on January 5, 2014 in Queens. Officer Brian Post approached Ms. Khawaja and pushed her face into the snow on the ground, preventing her from breathing, and placed her under arrest. As a result of the officer's actions, Ms. Khawaja chipped two teeth and suffered bruising. Ms. Khawaja was charged with disorderly conduct. The charge was later dismissed. Ms. Khawaja sued the City for violating her civil rights during this incident, and that lawsuit remains ongoing.

w.      According to a lawsuit filed in the Eastern District of New York,[25] an NYPD officer arrested Shawn Thomas for filming another arrest on January 4, 2013 in Brooklyn.  Officer Mohammed Karimzada approached Mr. Thomas, asked for his identification, grabbed his smart phone, and placed him under arrest. Mr. Thomas was charged with obstructing governmental administration, disorderly conduct and criminal possession of a weapon. The charges against Mr. Thomas were later dismissed. Mr.

---

[23] *Baines v. City of New York*, No. 15 CV 01472 (E.D.N.Y. filed Oct. 27, 2015).
[24] *Rizvi v. City of New York*, No. 15 CV 01900 (E.D.N.Y. filed Oct. 23, 2015).
[25] *Thomas v. City of New York*, No. 15 CV 02594 (E.D.N.Y. filed May 6, 2015).

Thomas was arrested again on June 15, 2013, this time by NYPD officers Soto and
Krzysztof Bogdanowicz, after filming police activity outside of a Brooklyn police
precinct.  Mr. Thomas was charged with disorderly conduct. The charge was later
dismissed. This case was settled for $5,000.

      x.      According to a lawsuit filed in the Eastern District of New York,[26]  NYPD
officers arrested Michael Guzman for filming their detention of three individuals
unknown to Mr. Guzman on a subway platform in Brooklyn on September 21, 2013. One
of the officers told Mr. Guzman that he could not record and that he should "back up."
Mr.  Guzman complied and continued to film. The officer grabbed Mr. Guzman's arm,
pushed him up against a wall and placed him under arrest. The charges against Mr.
Guzman were later dismissed. This case was settled for $20,000.

      y.      According to a lawsuit filed in the Eastern District of New York,[27] NYPD
officers, including Officer Joseph Fernandez, arrested Jared Louree for filming the arrest
of another individual on July 24, 2014 in Brooklyn. The officers attempted to erase the
footage on Mr. Louree's phone prior to his arrest. The charges against Mr. Louree were
adjourned in contemplation of dismissal. This case was settled for $17,500.

      z.      According to a lawsuit filed in the Southern District of New York,[28]
NYPD officers arrested Marc Ameruso for filming officers assaulting another individual
during a Super Bowl party on February 3, 2014 in lower Manhattan. Officer Marvin
Johnson shoved Mr. Ameruso to the ground when he noticed that Mr. Ameruso was
videotaping the aforementioned incident. When Mr. Ameruso asked Officer Johnson for

---

[26] *Guzman v. City of New York*, No. 15 CV 02662 (E.D.N.Y. filed May 8, 2015).
[27] *Lowman v. City of New York*, No. 15 CV 02777 (E.D.N.Y. filed May 13, 2015).
[28] *Ameruso v. City of New York*, No. 15 CV 03381 (S.D.N.Y. filed Feb.19, 2016).

his name and badge number, he was arrested and charged with three counts of disorderly conduct. The charges against Mr. Ameruso were later dismissed. Mr. Ameruso sued the City for violating his rights during this incident, and that lawsuit remains ongoing.

aa.   According to a lawsuit filed in the Eastern District of New York,[29] NYPD officers arrested Bashair Hogan for filming an interaction between officers and Mr. Hogan's neighbor on September 27, 2013 in Queens. The charges against Mr. Hogan were later dismissed. This case was settled for $20,000.

bb.   According to a lawsuit filed in the Eastern District of New York,[30] NYPD officers arrested Renee L. Cole for filming the arrest of her boyfriend on June 1, 2014 in Brooklyn. Officer Robert Deck approached Ms. Cole while she was filming, pushed her to the ground, confiscated her cell phone and placed her under arrest. Officers subsequently deleted her recording of the incident. Ms. Cole was detained for approximately 14 hours and refused medical care. She was charged with assaulting a police officer, obstructing governmental administration, harassment and resisting arrest. The charges against Mr. Cole were later dismissed. Ms. Cole sued the City for violating her rights during this incident, and that lawsuit remains ongoing.

cc.   According to a lawsuit filed in the Southern District of New York,[31] NYPD officers arrested Robert Vilella for filming the arrest of another individual on June 7, 2014 in the Bronx. Officers tackled him while he was filming and placed him under arrest. Mr. Vilella was charged with disorderly conduct. The charge was later dismissed. This case was settled for $10,002.

---

[29] *Hogan v. City of New York*, No. 15 CV 03634 (E.D.N.Y. filed June 22, 2015).
[30] *Cole v. City of New York*, No. 15 CV 04690 (E.D.N.Y. Aug. 11, 2015).
[31] *Russell v. City of New York*, No. 15 CV 07030 (S.D.N.Y. Sep. 4, 2015).

dd.     According to a lawsuit filed in the Eastern District of New York,[32] NYPD

officers arrested Bina Ahmad, a Legal Aid Society criminal defense attorney, for

photographing the arrest of another individual on October 11, 2013 in Kings County. As

she began to leave, Ms. Ahmad was handcuffed and placed under arrest by NYPD

officers, including Michael Sikora and] Napolitano. The charges against Ms. Ahmad

were later dismissed. Ms. Ahmad sued the City for violating her rights during this

incident, and that lawsuit remains ongoing.

ee.     Jose LaSalle was arrested in September 2013 for recording NYPD officers

with his smartphone.[33] While Mr. LaSalle was recording a group of police officers, one

of the officers shined a flashlight in his face. Mr. LaSalle then asked the officers for their

names and badge numbers. The officers responded by taking Mr. LaSalle's smartphone

out of his hands, throwing him against a fence and handcuffing and strip searching him.

His smartphone was not returned for multiple months, and when he did get his phone

back, the footage of the officers had been deleted. Mr. LaSalle was cited for jaywalking

and possession of a police scanner.

---

[32] *Ahmad v. City of New York*, No. 15 CV 07157 (E.D.N.Y. Feb. 22, 2016).
[33] Joshua Brown, *New York Copwatcher Sues NYPD for a Million Dollars for Arrests and Deletion of Footage*, PINAC NEWS (Apr. 28,2016),https://photographyisnotacrime.com/2016/04/28/new-york-copwatcher-sues-nypd-for-million-dollars-for-arrests-and-deletion-of-footage/; Andrew Meyer, *NYPD Officers Strip-Search, Assault, Arrest and Charge Man with Jaywalking for Recording Cops*, PINAC NEWS (Oct. 29, 2014), http://photographyisnotacrime.com/2014/10/29/nypd-officers-strip-search-assault-arrest-charge-man-jaywalking-recording-cops/.

ff.     According to the New York Daily News,[34] Shawn Thomas was assaulted and arrested by NYPD Transit Officer Efrain Rojas for recording a man receiving a summons at the Utica Avenue subway station in Brooklyn. While Mr. Thomas was recording the incident on his camera, Officer Rojas asked Mr. Thomas to leave the subway station. Mr. Thomas refused. Officer Rojas then escorted Mr. Thomas out of the station, but Mr. Thomas followed him back into the station. Officer Rojas subsequently grabbed Mr. Thomas and forcibly removed him from the station. At this time, Officer Rojas allegedly pulled the batteries out of Mr. Thomas's camera. Mr. Thomas then began to record the incident on his Blackberry. Officer Rojas took the phone and slammed Mr. Thomas's head into the pavement, splitting Mr. Thomas's lip. Officer Rojas allegedly deleted the video, but Mr. Thomas was later able to recover it. Mr. Thomas was arrested and charged with obstructing government administration, resisting arrest, criminal trespass and disorderly conduct. Mr. Thomas had to be transported to the hospital twice as he awaited arraignment.

gg.     Seventeen year-old Enrique Del Rosario was assaulted and arrested by five NYPD officers for videotaping officers throw a woman onto a sidewalk at the Puerto Rican Day Parade on June 8, 2014.[35] Officers grabbed Mr. Del Rosario, slammed him against a gate and beat him with batons. The officers confiscated Del Rosario's camera, and the camera was neither recovered nor entered into evidence. Mr. Del Rosario was

---

[34] Thomas Tracy, *VIDEO: Cop allegedly assaults man recording him in Brooklyn subway station*, N.Y. Daily News, Feb. 19, 2014, http://www.nydailynews.com/new-york/brooklyn/allegedly-assaults-man-recording-article-1.1620037.

[35] *Teen accused of assaulting NYPD cop, charges dropped after video proved he was victim*, RT (Mar. 14, 2015, 8:52 AM), https://www.rt.com/usa/239893-nypd-teen-assault-charges-dropped/.

charged with assaulting an officer, but a grand jury declined to prosecute the case. Mr.

Del Rosario was also charged with resisting arrest and larceny, but the District Attorney

offered to drop all charges if Mr. Del Rosario kept a clean record for six months.

hh.    According to CBS New York and the New York Times blog Media

Decoder,[36] in November 2011 at least 10 journalists—5 of whom had city-issued press

credentials—were arrested while covering the eviction of Occupy Wall Street protestors

from Zuccotti Park. Among those arrested include Associated Press writer Karen

Mathews, Associated Press photographer Seth Wenig and New York Daily News reporter

Matthew Lysiak. Thirteen news organizations in New York City, including the New York

Times, Associated Press, New York Daily News, New York Post and Thomson Reuters,

lodged complaints about the treatment of journalists and the suppression of coverage of

the event. Ten press clubs, unions, and other groups called for an investigation into the

police conduct at issue. The PEN American Center and PEN International issued a

statement calling the police actions "an obvious abridgment of the First Amendment right

of all Americans to monitor official actions that clearly carry their own First Amendment

concerns."

---

[36] *Several Journalists Among Those Arrested During Zuccotti Park Raid*, CBS NEW YORK
(Nov. 15, 2011 6:30 PM), http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-
those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About
Treatment During Protests*, N.Y. TIMES MEDIA DECODER (Nov. 21, 2011),
https://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-
treatment-during-protests/?_r=1.

  ii.  According to the New York Times,[37] photographer Robert Stolarik was arrested on August 12, 2004 by the NYPD for taking photographs of the arrest of a teenage girl in the Bronx. As Mr. Stolarik was taking photographs of the teenager's arrest, an officer instructed him to stop. Mr. Stolarik identified himself as a journalist for the New York Times and continued taking pictures. A second officer grabbed Mr. Stolarik's camera and slammed it into Mr. Stolarik's face. In a statement, the Police Department claimed that Mr. Stolarik had "inadvertently" struck an officer and "violently resisted arrest." The charges against Mr. Stolarik were dismissed, and the arresting officer was later indicted on three felony counts and five misdemeanors accusing him of falsifying statements surrounding Mr. Stolarik's arrest.

  jj.  According to Gothamist,[38] five photojournalists were arrested covering Occupy Wall Street protests on September 15, 16 and 17, 2012. Photographer Julia Reinhart was arrested after attempting to take a picture of an NYPD officer giving a dispersal order on a sidewalk. Another photographer was forced to the ground and detained. Additionally, a photographer on assignment for the Associated Press was shoved and prevented from taking a photo by an NYPD lieutenant.

---

[37] Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* N.Y. Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

[38] Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, GOTHAMIST (Sep. 19, 2012 1:28 PM), http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

kk.     According to the New York Daily News,[39] Angel Zayas filed a lawsuit against New York City in Manhattan Federal Court, alleging that NYPD officers roughed him up and arrested him on November 27, 2012 for attempting to photograph officers frisking a Hispanic man in Grand Central Station.

ll.     According to the Jewish Voice,[40] photojournalist Shimon Gifter was handcuffed on January 16, 2013 for filming NYPD officers stopping and frisking a young man on Avenue M in Midwood. Mr. Gifter was filming the stop-and-frisk when an officer told him to stop recording because the man was a juvenile. Mr. Gifter complied with the order and started filming the general scenery in front of a nearby store. Suddenly, an officer told him that he was under arrest, grabbed his video camera, put him in handcuffs, pushed him up against a wall and took his phone. When Mr. Gifter informed the officer that what the officer was doing was illegal, the officer deleted all the video files from the camera. Mr. Gifter was never formally arrested because an onlooker contacted Dominic Scotto, head of Community Affairs for the local 70th Precinct, who ordered the officer to release Mr. Gifter. Mr. Gifter attempted to file a report at the precinct, but the commanding officer refused to speak with him.

---

[39] Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, N.Y. Daily News (Dec. 13, 2013), http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548.

[40] Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (Jan. 24, 2013), http://jewishvoiceny.com/index.php?option=com_%20content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289&lang=en.

mm.     According to Gothamist,[41] Ed Garcia Conde, a journalist who writes for the Welcome 2 Melrose blog, was arrested on March 16, 2013 for recording an interaction between NYPD officer Sergeant Delgado and a man who the officer believed was violating the open container law. Sergeant Delgado told Mr. Conde to stop recording the encounter on his smartphone, and Mr. Conde responded by telling Sergeant Delgado that he had a legal right to continue recording. The sergeant then called over two other officers, slammed Mr. Conde against a building and handcuffed him.  Mr. Conde received two summonses: one for an open container violation and another for attempting to create a dangerous situation.

nn.     According to DNA Info,[42] a Harlem couple, Christina Gonzalez and Matthew Swaye, were arrested on May 26, 2013 for filming NYPD officers conducting motor vehicle stops at a checkpoint near the 145th Street Bridge.  The couple had been labeled as "professional agitators" by the NYPD and put on wanted posters in the 30th Precinct. While filming at the checkpoint, Ms. Gonzalez asked an officer if everything was all right, and after a brief discussion, the officer asked Ms. Gonzalez to step away. Ms. Gonzalez told the officer that she had a right to stand on the sidewalk.  After Ms. Gonzalez refused to give the officer her identification, the officer grabbed Ms. Gonzalez. Both Ms. Gonzalez and Mr. Swaye were arrested and charged with obstructing

---

[41] Ben Yakas, *Video: Bronx Man Hauled to Jail For Exercising Right to Videotape Cops*, GOTHAMIST (Mar. 16, 2013), http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

[42] Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA INFO (May 21, 2013 11:48 AM), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

governmental administration, disorderly conduct and resisting arrest. Ms. Gonzalez

claimed that she was several feet away from the officers while she was filming.  The

couple spent 25 hours in police custody. Ms. Gonzalez claimed that her SD card was

confiscated, and Mr. Swaye alleged that officers erased video on his smartphone of Ms.

Gonzalez getting arrested.

oo.     According to PINAC News,[43] in March 2012, an NYPD officer struck a

cameraman from WABC-TV at a crime scene.

33.     Upon information and belief, these examples represent only a small fraction of the

actual number of recent instances of NYPD officers interfering with the First Amendment rights

of individuals recording or attempting to record police activity, who have not interfered with the

officers. These cases represent only those incidents that were the subject of lawsuits or of news

coverage that Plaintiff has become aware of.

34.     Upon information and belief, in recent years, the City and the NYPD have

received numerous letters and complaints detailing attempts by police officers to chill the

exercise of individuals' First Amendment rights by interfering with attempts to record or

preventing the recording of police activity.

35.     As a result of this ongoing, widespread practice of NYPD officers interfering with

and chilling individuals' First Amendment rights, the City entered into a consent decree in which

it stipulated that "it is the policy of the New York City Police Department … that when a person

(or persons) is detained, stopped or arrested in public areas, a person or persons not involved in

---

[43] Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, PINAC NEWS (Mar. 22, 2012), http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/.

the conduct for which the first person is stopped or arrested may remain in the vicinity of the stop of arrest as an onlooker or onlookers, subject to the safety of the person stopped . . . the general public, and officers . . . None of the following constitutes probable cause for arrest or detention of an onlooker . . . (c) Taking photographs; (d) Remaining in the vicinity of the stop or arrest." Stipulation and Order, *Black v. Codd*, No. 73 Civ. 5283, 1 − 2 (S.D.N.Y. June 1, 1977). The NYPD's practice and custom of interfering with the rights of individuals who seek to record police activity misconstrues, or in the alternative, violates this consent decree.

36.     In 2014, the NYPD put out a FINEST Message (the "FINEST Message") addressing "Recording of Police Action by the Public." The FINEST Message states, "Members of the service are reminded that members of the public are legally allowed to record (by video, audio, or photography) police interactions. These interactions include arrest and other situations." It further prohibits NYPD officers from "interfer[ing] with a person's use of recording devices to record police interactions." Finally, it acknowledges, "intentional interference such as blocking or obstructing cameras or ordering the person to cease …violates the First Amendment." FINEST Message from Chief of Department, NYPD to All Commands, SER#: 9881632 (August 6, 2014) (on file with plaintiff attorneys). Upon information and belief, the NYPD's practice and custom of interfering with the rights of individuals who seeks to record police activity violates this FINEST Message.

37.     Upon information and belief, the NYPD has not instituted any training, monitoring, or supervision to ensure that officers comply with the consent decree and FINEST Message, and refrain from violating First Amendment rights through suppression of videotaping. Upon information and belief, the current training NYPD officers receive does not sufficiently train, monitor, supervise or discipline officers to identify circumstances under which officers are

required to allow individuals to record police activity. The violation of Mr. An's rights was a direct result of deficiencies in training, monitoring, and supervising police officers, for which the City is responsible. The longstanding pattern of constitutional violations by NYPD officers should have provided notice to the City and its policymakers.

38.     As a result of this failure to adequately train, monitor, supervise, and discipline NYPD officers to ensure compliance with the policy of the FINEST Message, the NYPD has continued to have a widespread practice and custom of interfering with the rights of individuals who record or attempt to record police officers performing their official duties in public places. This continued interference includes arresting or threatening to arrest individuals recording police activity, and otherwise preventing or hindering such individuals from recording the police. Examples of such action by the NYPD after the FINEST Message include:

a.     According to a lawsuit filed in the Southern District of New York,[44] Clemente Beckford, Ruth Beckford, and Benjamin Beckford were standing in front of their home on August 10, 2015 when NYPD officers approached, handcuffed, and searched Clemente. Officers turned next to Ruth, despite the fact that they did not find contraband on Clemente. Benjamin started recording the incident and, as a result, was arrested by the officers. Benjamin was released without charges and without explanation, while Ruth was charged with obstructing governmental administration and Clemente was charged with sale of a controlled substance in the third degree. All charges were eventually dismissed.

---

[44] *Beckford v. City of New York*, No. 16 CV 00261 (S.D.N.Y., filed Mar. 28, 2016).

b.      According to a lawsuit filed in the Eastern District of New York,[45]
Plaintiffs were having a barbecue in their front yard on July 3, 2015 when NYPD officers
arrived and began detaining and searching people at the barbecue. When Plaintiff Luis
Gomez began recording the incident, the officers grabbed and handcuffed him. An NYPD
officer told Mr. Gomez to put the phone away just before detaining him. Plaintiff
Williams was charged with obstructing governmental administration, Plaintiff John was
charged with obstructing governmental administration, resisting arrest and harassment,
and Plaintiff Gomez was charged with disorderly conduct. Williams's case was
dismissed, and the other two cases were adjourned in contemplation of dismissal.

c.      According to a lawsuit filed in the Southern District of New York,[46] Joel
Delorbe-Bell was a passenger in a car that was pulled over by the NYPD for having
tinted windows on January 20, 2015. When Mr. Delorbe-Bell began recording the
incident, the officers ordered him to get out of the car, grabbed him by the hand in which
he was holding his phone, searched him and handcuffed him. Mr. Delorbe-Bell was taken
to the 44th Precinct and released with a summons for disorderly conduct, which was
dismissed at the first court appearance.

d.      According to a lawsuit filed in the Southern District of New York,[47]
Deyan Fang was working as a street vendor selling his drawings on September 5, 2014
when NYPD officers approached him and asked for identification. Mr. Fang complied
and started recording the incident. The NYPD officers arrested him and charged him with
resisting arrest and a statutory violation for vending within ten feet of a crosswalk. The

---

[45] *John v. Demaio*, No. 15 CV 06094 (E.D.N.Y. filed Oct. 22, 2015).
[46] *Delorbe-Bell v. City of New York*, No. 15 CV 02344 (S.D.N.Y. filed Feb. 4, 2016).
[47] *Fang v. City of New York*, No. 15 CV 04886 (S.D.N.Y. filed Nov. 9, 2015).

charges were adjourned in contemplation of dismissal. The District Attorney's Office held Mr. Fang's phone for two months and deleted the video of the incident before it was returned.

e.      According to a lawsuit filed in the Southern District of New York,[48] on April 29, 2015, Daisy Villalobos was arrested by an NYPD officer in Manhattan while recording another officer arresting a protestor at a demonstration regarding the death of Freddy Gray. As Ms. Villalobos recorded the aforementioned incident, another officer grabbed her backpack and threw her down on the street. Her face struck the pavement. She was charged with disorderly conduct and resisting arrest. The charges were later dismissed and sealed. Ms. Villalobos sued the City for violating her civil rights, and that case is still ongoing.

f.      According to a lawsuit filed in the Eastern District of New York,[49] on May 27, 2015, Bernard Gold and his son, Mauricio Gold, were arrested by NYPD officers at Citi Field.  Mauricio had been recording his father's arrest prior to his own arrest. While at Citi Field, Bernard and Mauricio were approached by NYPD officers and told to leave the Mets game. Neither Bernard nor Mauricio had done anything illegal nor conducted themselves in such a manner as to warrant ejection. After Bernard refused to hand the officers his tickets, an officer twisted his arm, pushed him against a wall and handcuffed him. An MRI later revealed that Bernard tore his rotator cuff as a result of the arrest. Mauricio, who was standing 15 feet away from his father, took out his cellphone and began to record the interaction. One of the officers smacked the cellphone out of his

---

[48] *Villalobos v. City of New York*, No. 16 CV 05904 (S.D.N.Y. filed July 22, 2016).
[49] *Gold v. Ha*, No. 16 CV 03862 (E.D.N.Y. filed July 12, 2016).

hands, breaking it. Mauricio was then handcuffed. Both Bernard and Mauricio were charged with trespassing, but the charges were later dismissed. Their civil rights case against the City is still ongoing.

g.      According to a lawsuit filed in the Eastern District of New York,[50] Elsa Waithe was violently shoved by one or more NYPD officers on April 14, 2015 while attempting to record an arrest at a Black Lives Matter protest in downtown Brooklyn. Ms. Waithe was, from a safe distance, trying to record officers pushing a protestor against a wall. As she moved towards the arrest in progress, one or more NYPD officers, without warning, violently shoved her. NYPD officers also knocked down a legal observer from the National Lawyers Guild in an attempt to prevent the lawyer from documenting the police response to the protest. As a result of the forceful shove, Ms. Waithe's back struck a metal guard tree railing, and she had to be transported to New York Methodist Hospital where she was diagnosed with acute head trauma, bruised ribs and brain bleeding. Ms. Waithe filed a lawsuit against the City, which settled for an undisclosed amount.

h.      According to a lawsuit filed in the Eastern District of New York,[51] NYPD officers threatened to arrest Justin Martinez's family members for attempting to film officers' violent interactions with Justin Martinez and Jennie Perez Vierra on May 15, 2015. Mr. Martinez's family members attempted to film officers who were pinning Ms. Vierra between a wall and a door for several minutes. Ms. Vierra had recently had two cardiac stents put in. The officers' actions caused her extreme shortness of breath and

---

[50] *Waithe v. The City of New York*, No. 15 CV 06651 (E.D.N.Y filed Nov. 9, 2015).
[51] *Martinez v. City of New Yorkl*, No. 16 CV 02460 (E.D.N.Y filed May 13, 2016).

ligament damage to her left shoulder. In addition, these actions caused her to defecate and urinate on herself.  Mr. Martinez's family members also attempted to film the officers punching Mr. Martinez in the face and body. Mr. Martinez's family members did not record the incidents due to the officers' threats. The civil rights case against the City that resulted from this incident is still ongoing.

   i.  According to a lawsuit filed in the Eastern District of New York,[52] Kalifa Pierre was arrested by NYPD officers on September 27, 2015 for recording a group of police officers. Ms. Pierre was standing outside of her apartment in Brooklyn recording a group of officers on her cellphone when two officers grabbed her, threw her against a car, and handcuffed her. Ms. Pierre was not committing any crime or interfering with the officers. The officers placed Ms. Pierre under arrest and transported her to the 73rd Precinct. She was charged with obstructing governmental administration and resisting arrest. Ms. Pierre reluctantly agreed to an adjournment in contemplation of dismissal. Ms. Pierre subsequently sued the City for violating her civil rights during this incident, and the case settled for an undisclosed amount.

   j.  According to a lawsuit filed in the Eastern District of New York,[53] Ronda Peters was arrested by NYPD officers on September 2, 2015 in Brooklyn for filming police who were seizing a group of young men playing dominoes. Ms. Peters was returning home from band practice when she saw officers throw the aforementioned young men against a wall. Ms. Peters began to record the interaction. Officers approached Ms. Peters and asked her for identification. Ms. Peters identified herself and

---

[52] *Pierre v. The City of New Yorkl*, No. 16 CV 01917 (E.D.N.Y. filed Mar. 19, 2016).
[53] *Peters v. Rolfottl*, No. 16 CV 01943 (E.D.N.Y. filed Mar. 20, 2016).

informed the officers that she could not provide identification as she had lost her wallet. The officers placed Ms. Peters in handcuffs, searched her and confiscated her phone. Ms. Peters was arrested and falsely charged with unlawful possession of marijuana, consumption of alcohol in public and false personation. She was kept in police custody for 24 hours. Ms. Peters sued the City for violating her civil rights during this incident, and the case settled for an undisclosed amount.

k.      According to a lawsuit filed in the Southern District of New York,[54] Hayward Gatch was arrested on September 22, 2014 while filming the arrest of a demonstrator at the corner of Exchange Alley and Broadway in Manhattan. While he was filming, Mr. Gatch was knocked to the ground by a NYPD officer who was struggling with the pedestrian arrestee, and Mr. Gatch's head hit a barricade as he fell. Mr. Gatch sued the City for violating his civil rights during this incident, and that lawsuit settled for $60,000.

l.      According to a lawsuit filed in the Southern District of New York,[55] Xavier Roper and William Lockett were arrested on December 4, 2014 while observing and documenting–including by taking photographs–a Black Lives Matter demonstration in the vicinity of Times Square. NYPD Inspector Timothy Beaudette issued an order for demonstrators in the area to disperse, but NYPD officers at the scene did not provide a path for dispersal. A NYPD supervising officer then ordered the officers in the area to "just take somebody and put them in cuffs," at which point Mr. Roper was grabbed, brought to an area with other detained demonstrators and placed in flex-cuffs. Mr. Roper

---

[54] *Gatch v. City of New Yorkl*, No. 15 CV 08714 (S.D.N.Y. filed Nov. 5, 2015).
[55] *Roper v. City of New York*, No. 15 CV 08899 (S.D.N.Y. filed Nov. 12, 2015).

was charged with two counts of disorderly conduct. Mr. Lockett was arrested while attempting to leave the area and was also charged with disorderly conduct. The charges against both Mr. Roper and Mr. Lockett were dismissed and sealed. Mr. Roper and Mr. Lockett sued the City for violating their civil rights during this incident, and that lawsuit is still ongoing.

       m.     According to another lawsuit filed in the Southern District of New York[56] in connection with the same Black Lives Matter demonstration in Times Square on December 4, 2014, Peter Levinson was arrested after photographing and videotaping the demonstration. Mr. Levinson observed at least one instance of an NYPD officer arresting a demonstrator without apparent cause, and he moved toward one such incident in progress to photograph and videotape the incident. Mr. Levinson remained a safe distance away from where the arrest was taking place. NYPD officers ordered individuals to leave the street where Mr. Levinson was standing and move to the sidewalk, but Mr. Levinson was prevented from moving onto the sidewalk by metal barricades and a number of NYPD officers who had formed a line in front of the sidewalk; thus, he was unable to comply with the order. Shortly thereafter, Mr. Levinson heard a NYPD supervising officer direct the NYPD officers in the vicinity to "just take somebody and put them in cuffs." At this point, NYPD Officer Efrain Morales approached Mr. Levinson and ordered him to stop recording. Mr. Levinson put his phone in his pocket, but he was then grabbed by two additional NYPD officers, and Officer Morales informed him that he was under arrest. Mr. Levinson's arms were pulled behind his back in an aggressive manner, and he was placed in flex cuffs, which caused injuries to his back and shoulder that

---

[56] *Levenson v. Morales*, No. 15 CV 08902 (S.D.N.Y. filed Nov. 12, 2015).

required surgery. Mr. Levinson was kept standing outside in the cold for over one hour after his arrest and was then detained for 11 hours before he was released. Mr. Levinson was charged with two counts of disorderly conduct. Both charges were later dismissed and sealed. Mr. Levinson sued the City for violating his civil rights during this incident, and the City paid Mr. Levinson $5,000 to settle the case.

n.   According to a lawsuit filed in the Southern District of New York,[57] Matthew Christian was arrested after he used his cellphone to record police officers while he was on his way to work on August 26, 2015. Mr. Christian observed a police cruiser in front of his bicycle, and the officers inside the cruiser were yelling at laborers outside Home Depot on Willoughby Avenue. Mr. Christian took out his phone and began filming the interaction. Mr. Christian caught up with the police cruiser and requested the badge number of an officer insider the cruiser, but the officer refused the request and drove away. Mr. Christian again caught up with the police cruiser and requested the badge number, which he was then given.  Thereafter, the police cruiser began following Mr. Christian, and an officer rolled down a window of the cruiser and asked Mr. Christian where he lived. The officer then ordered Mr. Christian to pull over. The officer requested Mr. Christian's identification and wrote down his name. Mr. Christian filed a CCRB complaint related to this incident, which was substantiated.  Mr. Christian sued the City for violating his civil rights during this incident, and that lawsuit remains ongoing.

o.   According to a lawsuit filed in the Southern District of New York,[58] Michael Younes was arrested on February 21, 2015 after filming NYPD officers arresting

---

[57] *Christian v. Kennedy*, No. 16 CV 01028 (S.D.N.Y. filed Feb. 10, 2016).
[58] *Younes v. New York*, No. 16 CV 01030 (S.D.N.Y. filed Feb. 10, 2016).

his friends in the vicinity of 125 East 11th Street Mr. Younes did not interfere with the arrest of his friends, but NYPD officers Stanley Lopez, Gregory Fink, and Frank Kurys seized, handcuffed and arrested Mr. Younes. The officers accused Mr. Younes of unlawfully interfering with their duties. Mr, Younes was taken to the 9th Precinct, his personal property was taken from him, and he was held for five hours before being taken to central booking. He was held at central booking for an additional 16 hours before being arraigned. Mr. Younes was charged with obstructing governmental administration in the second degree, criminal possession of a controlled substance in the seventh degree and harassment in the second degree. At Mr. Younes's next court appearance, all charges against him were dismissed and sealed. Mr. Younes filed a lawsuit against the City for alleged violations of his civil rights during this incident, and that lawsuit remains ongoing.

p.      According to a lawsuit filed in the Eastern District of New York,[59] Tyrone Buie was arrested after recording his friend's stop, search, and arrest by NYPD officers on July 30, 2015 at 2822 West 32nd Street in Brooklyn. After Mr. Buie started filming, NYPD Officer Vincent Lindner approached him, threw him to the ground and placed him in handcuffs.  Officers Lindner, William Dugan, and Miguel Figeroa informed the King's County District Attorney's Office that they had observed Mr. Buie committing criminal trespass in the third degree. Mr. Buie spent over one day in custody after his arrest. All charges against Mr. Buie were eventually dismissed. Mr. Buie sued the City for violating his civil rights during this incident, and that lawsuit is still ongoing.

---

[59] *Buie v. The City of New York*, No. 16 CV 00960 (E.D.N.Y. filed Feb. 25, 2016).

q.      According to a lawsuit filed in the Southern District of New York,[60] Jeronimo Maradiaga, Cosme Del Rosario-Bell, Randolph Carr and Kevin Park were arrested on February 22, 2014 after recording a NYPD traffic checkpoint on the north sidewalk of the 145th Street Bridge near Lenox Avenue. All four individuals remained on a public sidewalk and did not interfere with the NYPD officers conducting traffic stops. They were approached by NYPD Officer Kevin Cox and an unidentified NYPD sergeant and were told that they needed to step away from the traffic checkpoint. They stepped back and informed the officers that they were engaging in their constitutionally protected right to record police activity. The officers then handcuffed and arrested all four plaintiffs. Mr. Maradiaga and Mr. Del Rosario-Bell spent almost 24 hours in custody and were charged with obstructing governmental administration in the second degree. Mr. Carr and Mr. Park were issued summonses for disorderly conduct. No prosecution ever resulted from the summonses. The four arrestees sued the City for violating their civil rights during this incident, and that lawsuit remains ongoing.

r.      According to a lawsuit filed in the Eastern District of New York,[61] Oquan Hardy was working at a tire repair shop on October 21, 2015 at 2063 Atlantic Avenue in Brooklyn when an individual ran inside his shop followed by NYPD officers. Mr. Hardy told the officers that there were dogs in the back of his shop, and he started to record the incident.  The NYPD officers asked Mr. Hardy to move away, and he moved across the street when instructed. The officers then interrogated Mr. Hardy about the shop, tightly handcuffed him and brought him to the 73rd Precinct. Mr. Hardy was charged with

---

[60] *Maradiaga v. City of New York*, No. 16 CV 08325 (S.D.N.Y. filed Oct. 25, 2016).
[61] *Hardy v. City of New York*, No. 16 CV 05804 (E.D.N.Y. filed Oct. 18, 2016).

obstruction of governmental administration, which the District Attorney's Office declined to prosecute. Mr. Hardy sued the City for violating his civil rights during this incident, and that lawsuit remains ongoing.

s.      According to a lawsuit filed in the Eastern District of New York,[62] Patrick Landers was attending a Black Lives Matter protest on April 14, 2015 as a member of the press and had a press badge with him. Mr. Landers filmed an incident during which a man standing near him was tackled by a NYPD officer and was then arrested. While Mr. Landers was filming the arrest, NYPD officers told him to back up, and he complied with the requests.  After Mr. Landers complied with these requests, NYPD Lieutenant Ahmed yelled into a bullhorn in Mr. Landers's face that Mr. Landers needed to stay in the zone of safety. Mr. Landers was over 1500 feet away from the incident he was filming at the time. Mr. Landers was then arrested and charged with disorderly conduct and obstruction of governmental administration. NYPD officers placed him in a van for three to four hours where he became overheated and dehydrated and lost consciousness. He was then taken to the 75th Precinct where he was issued a desk appearance ticket. Mr. Landers sued the City for violating his civil rights during this incident, and that lawsuit remains ongoing.

t.      According to a lawsuit in the Eastern District of New York,[63] NYPD officers arrested Travis Bynoe for filming his confrontation with an officer on September 28, 2014 in Brooklyn. All charges against Mr. Bynoe were later dismissed. Mr. Bynoe

---

[62] *Landers v. City of New York*, No. 16 CV 05176 (E.D.N.Y. filed Sep. 16, 2016).
[63] *Bynoe v. City of New York*, No. 15 CV 07319 (E.D.N.Y. filed May 27, 2016).

sued the City for violating his civil rights during this incident, and that lawsuit remains ongoing.

u.      According to a lawsuit filed in the Southern District of New York,[64] NYPD officers arrested Shomari Callender in Queens on March 10, 2015 after a friend of Mr. Callender's attempted to record the officers assaulting Mr. Callender. The officers falsely told Mr. Callender's mother that they had arrested him because he had told a friend to record his interaction with the officers. Officers pulled Mr. Callender over in a rental car and told him that he had failed to properly signal. Mr. Callender asked an officer why the officer claimed that he had failed to properly signal. Officers cuffed Mr. Callender and repeatedly punched him the ribs. Mr. Callender's friend attempted to record the assault on his cellphone, but an officer knocked the cellphone out of his hands. Mr. Callender was arrested and charged with resisting arrest, obstructing governmental administration, unlawful possession of marijuana and making an illegal signal. All charges were later dismissed. His civil rights case against the City is still ongoing.

v.      According to the New York Times,[65] an NYPD officer, Jonathan Munoz, arrested Jason Disisto on charges of disorderly conduct, resisting arrest and interfering with a police investigation.  Officer Munoz was charged with official misconduct and lying on a criminal complaint when video from a surveillance camera showed Officer Munoz arrest Mr. Disisto when he borrowed a phone from friend and raised it to film the

---

[64] *Callender v. City of New York*, No. 16 CV 02936 (E.D.N.Y. filed June 7, 2016).

[65] James C. McKinley, Jr., *New York Officer Is Charged in Arrest of Man Who Tried to Film Him*, N.Y. Times, Dec. 22, 2015, at A21.

police as they searched Mr. Disisto's friend.  The video later shows the phone thrown from a police car.

      w.     Jose LaSalle was arrested on September 17, 2015 for videotaping two NYPD officers arrest two men in the Bronx. [66] Mr. LaSalle had videotaped the arrests the day before he himself was arrested.  One of the two arrestees was taken to Barnabas Hospital, and Mr. LaSalle went to the hospital to continue recording. As NYPD officers watched, hospital security twisted Mr. LaSalle's arm and pushed him against a wall. The following day, NYPD officers stopped Mr. LaSalle on the street to arrest him for the aforementioned incident. The officers seized Mr. LaSalle's camera and returned it months later with the footage of the arrests and hospital deleted. Mr. LaSalle was charged with assault, menacing, trespass and harassment. All charges against Mr. LaSalle were later dismissed.

      x.     According to NY1, PIX11 and .Mic,[67] Officer Risdel Martinez pointed a gun at Calvin West for videotaping him. Mr. West recorded Officer Martinez as the

---

[66] Chauncey Alcorn, *Cop Watch Activist involved in $1M lawsuits against NYPD for retaliation*, N.Y Daily News, Apr. 26, 2016, http://www.nydailynews.com/new-york/bronx/watch-activist-involved-1-million-lawsuits-nypd-article-1.2614337.

[67] Dean Malinger, *NYPD Officer on Modified Duty After Harlem Residents Say Officer Pulled Gun on Man Videotaping Arrest*, NY1 (May 20, 2016 11:37 AM), http://www.ny1.com/nyc/all-boroughs/criminal-justice/2016/05/20/nypd-officer-on-modified-duty-after-harlem-residents-say-he-pulled-gun-on-man-videotaping-arrest-of-someone-else.html; *Man speaks out after filming arrest in which NYPD officer pointed gun at him*, PIX11 (May 23, 2016), http://pix11.com/2016/05/23/man-speaks-out-after-filming-arrest-in-which-nypd-officer-pointed-gun-at-him/;  Mathew Rodriguez, *NYPD Officer Loses Badge After He Points Gun at Man Videotaping Him, Punches Bystander*, .MIC (May 21, 2016), https://mic.com/articles/144051/nypd-officer-loses-badge-after-he-points-gun-at-man-videotaping-him-punches-bystander#.4ZzeoIVuK.

officer repeatedly punched and then placed another individual in a chokehold. Officer Martinez has been stripped of his badge and gun and placed on modified duty.

y.      According to the New York Daily News,[68] David Rivera was arrested by NYPD officers for filming a police scuffle with his neighbors in the hallway of the Marlboro Houses in Brooklyn. Mr. Rivera was in his apartment watching a movie with his girlfriend when he heard tumult in the hallway. He saw three neighbors fighting with NYPD officers and began to videotape the incident using his smartphone. Officer Diana Pichardo pointed her gun at Mr. Rivera and ordered him to go inside his apartment. Mr. Rivera stepped back inside the doorway and continued to film the incident. Officer Pichardo yelled at Mr. Rivera to give her his phone, and she then took Mr. Rivera's phone. Officer Pichardo and other officers arrested Mr. Rivera and searched his apartment without a warrant. The illegal search was captured on video by cameras that Rivera had installed inside his apartment. Mr. Rivera was held in custody for 43 hours and released without seeing a judge. The Brooklyn District Attorney's Office declined to prosecute the case.

z.      According to the Huffington Post,[69] Dennis Flores, founder of the police watchdog group El Grito de Sunset Park, was arrested on March 14, 2016 after filming NYPD Strategic Response Group officers during a protest against police brutality in the

---

[68] John Marzulli, *SEE IT: Infamous NYPD sergeant points gun at man recording her, then busts into apartment and arrests him*, N.Y. Daily News, June 5, 2016, http://www.nydailynews.com/new-york/brooklyn/nypd-sergeant-aims-gun-man-recording-illegal-search-article-1.2661248.

[69] Josmar Trujillo, *A Week of Crackdowns on Activists and Copwatchers in NYC*, HUFFINGTON POST (Mar. 17, 2016), http://www.huffingtonpost.com/josmar-trujillo/a-week-of-crackdowns-on-a_b_9484768.html.

Bronx. NYPD officers repeatedly tried to break up the march and threatened

demonstrators with arrest if they crossed any street without a green light. Mr. Flores was

arrested for allegedly jaywalking and was released after being held for an hour.

aa.      According to the Huffington Post and Gothamist,[70] Five Muallmm-ak,

who is on Mayor DeBlasio's Task Force on Behavioral Health and Criminal Justice, and

singer Joseph "Jazz" Hayden were arrested on March 15, 2016 because Hayden filmed

NYPD officers forcibly removing a homeless man from the street. Neither Hayden nor

Muallmm-ak interfered with the officers. As Hayden filmed the encounter, other officers

arrived and knocked him to the ground. Hayden, who is in his 70s, tried to hold on to a

police officer's arm to brace his fall. Both Hayden and Muallmm-ak were arrested and

charged with obstruction of government administration and two counts of disorderly

conduct. Five friends of Hayden and Muallmm-ak—Nuratu Otulana, Channing Tyner,

Rachel Levine, Joshua Kristal and Terrance Slater—went to the Manhattan precinct

where Hayden and Muallmm-ak were being held to inquire about the arrests. The five

friends were themselves arrested and charged with failure to disperse. Hayden and

Muallmm-ak were eventually released after spending 20 hours at the precinct.

bb.      According to the Huffington Post, New York Daily News and PINAC

News,[71] Ramsey Orta, who filmed the police chokehold-killing of Eric Garner in 2014,

---

[70] *Id.*; Victoria Law, *It's 2016 & the NYPD Will Still Arrest You for Filming Them*,
GOTHAMIST (Mar. 17, 2016), http://gothamist.com/2016/03/17/nypd_arrest_video_edp.php.

[71] Josmar Trujillo, *A Week of Crackdowns on Activists and Copwatchers in NYC*,
HUFFINGTON POST (Mar. 17, 2016), http://www.huffingtonpost.com/josmar-trujillo/a-week-
of-crackdowns-on-a_b_9484768.html; Dale W. Eisinger and Graham Rayman, *Ramsey Orta,
man who filmed viral video of Eric Garner's death, charged for allegedly interfering with
another arrest*, N.Y. Daily News (Mar. 17, 2016), http://www.nydailynews.com/new-

was arrested on March 16, 2016 for filming the arrest of a man pulled over in his car by the NYPD in the Lower East Side of Manhattan. Mr. Orta was arrested after he gave the arrest victim a card for Copwatch, a national police accountability organization. Mr. Orta was held at the 7th Precinct until an NYPD captain showed up and arranged his release. Mr. Orta received a desk appearance ticket.

      cc.     According to the New York Daily News,[72] Threstan Ralph was arrested and charged with disorderly conduct for merely recording five officers handcuffing a woman on the street in Brooklyn. The video of the incident shows that Mr. Ralph did not interfere with the woman's arrest and was standing further than an arm's length away from the officers while filming.

      dd.     According to the New York Daily News,[73] Bronx teenager Jonathan Harris was arrested on August 23, 2016 after filming NYPD officers interacting with two young girls, age 12 and 14, in a Bronx park. The girls were playing in a park near the Lester Patterson Houses in Mott Haven when officers told them to leave because the park was closing. One of the officers allegedly asked the 14-year-old for identification and then grabbed her in a chokehold from behind. After the 12-year-old told the officer to get

---

york/manhattan/man-filmed-viral-eric-garner-video-arrested-article-1.2568044?a; Ben Keller, *NYPD Arrest Ramsey Orta, Man who Recorded Eric Garner Death, for Recording too Closely*, PINAC NEWS (Ma. 19, 20116), http://photographyisnotacrime.com/2016/03/19/nypd-arrest-ramsey-orta-man-who-recorded-eric-garner-death-for-recording-too-closely/.

[72] John Marzulli, *Exclusive: NYPD Accused of Arresting Man for Recording Video of Cops Cuffing Woman*, N.Y. Daily News, June 16, 2016, http://www.nydailynews.com/new-york/nypd-accused-arresting-man-recording-video-cops-article-1.2675620.

[73] Jennifer H. Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News, Aug. 29, 2013, http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

off her sister, the officer's partner threw the 12-year-old to the ground. The officers

proceeded to rip off the girls' hijabs. The girls' brother asked the officers why the girls

were in handcuffs and was picked up and slammed on the ground. Jonathan Harris, an

18-year-old college student, also told the officers to leave the girls alone. He

subsequently took out his smartphone to record the officer atop the 12-year-old.

According to Harris, the cop told him: "Come here, you little motherfucker. You like

recording?" Harris sprinted away, but an officer tackled him, pushed his face in the dirt,

twisted his arm behind his back and punched him in the eye. The officer threatened to

break Harris's arm. Harris also alleges that he was pepper sprayed.

39.     Upon information and belief, these examples represent only a small fraction of the

actual number of instances after the FINEST Message of NYPD officers interfering with the

First Amendment rights of individuals recording or attempting to record police activity, without

interfering with the officers. These instances represent only those cases that resulted in civil

rights complaints being filed against the City or in news coverage of the incident.

40.     Furthermore, there is ample evidence that many more instances of NYPD officers

violating the First Amendment rights of individuals who record or attempt to record police

officers performing their official duties in public than those described in ¶ 38 above. The NYC

Civilian Complaint Review Board receives, investigates, mediates, hears, makes findings and

recommends action on complaints against New York City police officers alleging the use of

excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive

language.[74] In 2016, there were at least 77 reports made to the NYC Civilian Complaint Review

---

[74] *About CCRB*, N.Y.C. CIVILIAN COMPLAINT REV. BOARD,
http://www1.nyc.gov/site/ccrb/about/about.page.

Board ("CCRB") alleging that officers interfered with recordings, 23 allegations related to

unlawful search of an electronic device and 10 allegations related to deleting electronic

information off a device.[75] Prior to 2016, the CCRB found that 201 fully investigated complaints

decided between January 1, 2014 and December 31, 2015 contained one or more allegations of

police interference with civilian recording of police activity; search of a device for a recording of

police activity; deletion of a recording of police activity; and/or damage to or destruction of the

recording device.[76]

41.     While Plaintiff does not have access to the outcomes of these CCRB

investigations, with the exception of the one described in the lawsuit *Christian v. Kennedy*, No.

16 CV 01028 (S.D.N.Y. filed Feb. 10, 2016) (Section 38(n) above), the City agency found a

sufficient pattern and practice from 2014 to 2016 to merit closer study in a full "Issue-Based

Report". According to the CCRB's website, it only issues "Issue-Based Reports" when "[the]

CCRB's investigation of complaints and data analysis sometimes reveals problems that go

beyond specific acts of misconduct and suggest the need for a change in police department

policy, procedures, or training. When this occurs, the board notifies the police commissioner and

recommends solutions."[77]

42.     Their upcoming report will likely detail patterns in substantiated allegations. The

report was expected at the end of 2016, which they confirmed during a City Council hearing on

---

[75] *Data Transparency Initiative*, N.Y.C. CIVILIAN COMPLAINT REV. BOARD,
http://www1.nyc.gov/site/ccrb/policy/data-transparency-initiative-allegations.page.
[76] N.Y.C. CIVILIAN COMPLAINT REV. BOARD 2015 ANNUAL REP. (2015).
[77] *Issue-Based Reports*, N.Y.C. CIVILIAN COMPLAINT REV. BOARD,
http://www1.nyc.gov/site/ccrb/policy/issue-based-reports.page.

October 21, 2016.[78]  The "bystander report" has not yet been published, but publication is still expected.

43.     The complaints and news coverage detailed in ¶ 38 above coupled with the reports made to the CCRB demonstrate that the FINEST Message has not had the intended effect of preventing NYPD officers from violating the First Amendment rights of individuals who record or attempt to record police officers performing their official duties in public. Rather, since August 2014 when the FINEST Message was issued, there have been well over 100 instances of individuals complaining of this type of civil rights violation. The number of complaints makes clear that, whatever the intention, the content of the FINEST Message does not reflect the official policy of the NYPD in practice.

44.     The City's failure to train, monitor, supervise, and discipline NYPD officers to respect individuals' First Amendment rights amounts to deliberate indifference to the constitutional violations committed by the NYPD against individuals including Mr. An. Given the ubiquity of cameras and smartphones, the City should have anticipated that individuals would attempt to record police performing their official duties in public places. The City knows, or should have known, that NYPD officers have a history of mishandling situations and committing constitutional violations where a member of the public attempts to record police activity.

45.     The NYPD's practice and custom of interfering with individuals who, without interfering with police activity, record or attempt to record police officers is so persistent,

---

[78] N.Y.C. Council Committee on Public Safety, *Civilian Complaint Rev. Board Oversight Hearing* (Nov. 10, 2016), http://legistar.council.nyc.gov/Video.aspx?Mode=Auto&URL=aHR0cDovL2NvdW5jaWxueeW MudmllYml0LmNvbS9mbGFzaC9tZWRpYV9wbGF5ZXJJfNzk4Yy5zd2Y%2Fc2VydmVyPW5 5Yy1ydG1wLnBlZ2NlbnRyYWwuY29tJmZjY291bnQ9Y291bmNpbG55YzZaWRlb0ZpbGVu YW1lPU5ZQ0MtUFYtQ0gtQ0hBXzE2MTAyMS0xMDI1NTcubXA0&Mode2=Video#.WJidIz 92aIE.email.

widespread and pervasive as to constitute a custom or usage and imply the constructive

knowledge or acquiescence of the City and its policymakers. The numerous instances of abuse, a

small number of which are described above, particularly given that a number of lawsuits have

been filed against the City, the NYPD, and NYPD officers, demonstrates that the City is, or

should have been, aware of the constitutional violations committed by the NYPD. The

constitutional violations are so numerous, persistent and pervasive that the need for corrective

action is obvious, and the City's failure to take any such action constitutes deliberate indifference

to the violations. This deliberate indifference to the NYPD's widespread deprivation of

constitutional rights can be considered a policy, practice, or custom of the City.

## FIRST CLAIM

### Violation of Plaintiff's First Amendment Rights

46.     Plaintiff repeats and realleges each and every allegation set forth above as if set

forth herein.

47.     Plaintiff has an interest protected by the First Amendment. Plaintiff was

exercising his First Amendment interest when he recorded police officers on July 28, 2014. Mr.

An's arrest and prosecution were motivated or substantially caused by his exercise of his First

Amendment right to record police performing their official duties in a public place.

48.     At all relevant times the arresting officer, Officer Becaj, was an agent, servant and

employee acting within the scope of his employment as a police officer by the City of New York

and the NYPD. The City of New York is responsible for Officer Becaj's conduct and for the

arrest and prosecution of the Plaintiff.

49.     All acts complained of herein were carried out by NYPD officers in their capacities as police officers and pursuant to the customs and practices of the City, including the NYPD.

50.     The NYPD maintains a widespread practice and custom of failing to respect the First Amendment rights of individuals who, without interfering with police activity, record or attempt to record police officers performing official duties in a public place. The actions of Officer Becaj and the other arresting officers reflect the customs and practices of the NYPD and the City. These customs and practices resulted in a violation of Plaintiff's First Amendment rights. They include, but are not limited to: 1) threatening to arrest and otherwise punish Plaintiff for recording NYPD officers performing their official duties in a public place; 2) arresting Plaintiff on pretextual charges because he was recording police officers; and 3) seizing and depriving Plaintiff of the use of the cellular phone he was using to record the NYPD officers.

51.     The City, through its policymakers and agents, condoned, permitted, encouraged and/or ratified the NYPD practices and customs challenged herein, which allowed NYPD officers to disregard and violate Mr. An's exercise of his First Amendment rights when he attempted to record NYPD officers performing their official duties on July 28, 2014.

52.     Furthermore, the City, through its policymakers and agents, has been deliberately indifferent to the rights of individuals, such as Mr. An, who come into contact with NYPD officers as they record or attempt to record the officers. The City failed to adequately train, monitor, supervise and discipline its officials, employees and agents, including the NYPD and Officer Becaj specifically, to respect and not violate the First Amendment rights of individuals such as Mr. An. As a result of the City's failure, Mr. An's First Amendment rights were violated when he was arrested due to his attempt to record police activity.

53

53.     The practices and customs of the NYPD condone or tacitly authorize NYPD officers–acting as employees and agents of the City–to engage in unconstitutional seizures of cameras being used for First Amendment activity. These practices and customs caused Mr. An to suffer a violation of his constitutional rights and were the moving force behind the deprivation of Mr. An's constitutional rights.

54.     Plaintiff's arrest and prosecution effectively chilled and infringed upon his exercise of his First Amendment rights. Thus, Plaintiff suffered injury as a result of the Defendant's conduct.

## JURY DEMAND

55.     Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     A declaratory judgment that the City violated the Plaintiff's rights under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983, and that Mr. An's attempted recording of NYPD officers on July 28, 2014 was an act protected by the First Amendment to the Constitution.

B.     A permanent injunction restraining the City of New York and its employees from punishing or otherwise retaliating against the Plaintiff or any other individual who, without interfering with police activity, records or attempts to record police officers who are performing official duties in a public place.

C.     Such other and further relief as the Court deems just and proper.


Dated: February 23, 2017

54

New York, New York

/s/ Charles S. Sims
Joshua Carrin
Cynthia Conti-Cook
The Legal Aid Society
199 Water Street, 6th Floor
New York, New York 10038
Telephone: (212) 577-3265
Facsimile: (646) 449-6786
jcarrin@legal-aid.org
cconti-cook@legal-aid.org

Charles S. Sims
William C. Silverman
Sarah E. Sullivan
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
csims@proskauer.com
wsilverman@proskauer.com
ssullivan@proskauer.com

*Attorneys for Plaintiff*