UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUBEN AN,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO AMEND

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark D. Zuckerman*
*Tel: (212) 356-3519*
*Matter #: 2016-025603*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY.................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 2

STATEMENT OF FACTS IN PLAINTIFF'S PROPOSED AMENDED COMPLAINT............ 2

ARGUMENT

    POINT I

        PLAINTIFF LACKS STANDING TO SEEK
        INJUNCTIVE RELIEF.............................................................................. 5

        A.  Legal Standard .................................................................................. 5

        B.  Likelihood of Future Harm............................................................... 8

        C.  Official Policy or Its Equivalent ....................................................... 10

        D.  Custom or Usage............................................................................... 12

        E.  Failure to Train or Supervise ............................................................ 15

        F.  Plaintiff's Remaining Arguments in Opposition
            to Defendant's Motion to Dismiss.................................................... 17

    POINT II

        PLAINTIFF'S PRAYER FOR INJUNCTIVE
        RELIEF IS NOT ACTIONABLE.............................................................. 20

    POINT III

        PLAINTIFF'S CLAIM FOR DECLARATORY
        RELIEF SHOULD BE DISMISSED ....................................................... 20

POINT IV

PLAINTIFF HAS NOT SUFFICIENTLY PLED
MUNICIPAL LIABILITY ARISING OUT OF
THE UNDERLYING ARREST OF JULY 28, 2014 .............................. 22

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Aguilar v. Immigration and Customs and Enforcement Division,
   811 F. Supp.2d 803 (S.D.N.Y. 2011)......................................................................................18

An v. City of New York,
   16 CV 5381 (LGS), 2017 U.S. Dist. LEXIS 14857
   (S.D.N.Y. Feb. 2, 2017) ...........................................................6, 11, 12, 13, 15, 16, 22, 24, 25

Ashcroft v. Iqbal,
   556 U.S. 662 (2008).........................................................................................................23

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007).........................................................................................................23

Bertuglia v. City of New York,
   839 F. Supp.2d 703 (S.D.N.Y. 2012)......................................................................................25

Brandon v. City of New York,
   705 F. Supp.2d 261 (S.D.N.Y. 2010)......................................................................................12

Calderon v. City of New York,
   138 F. Supp.3d 593 (S.D.N.Y. 2015)...............................................................................13, 24

Chiste v. Travelocity.com, LP,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010)..............................................................................20, 21

City of Los Angeles v. Lyons,
   461 U.S. 95 (1983)..................................................................7, 8, 9, 10, 11, 12, 15, 17, 18

City of St. Louis v. Praprotnik,
   485 U.S. 112 (1985) (plurality opinion) .................................................................................12

Collins v. City of New York, et. al.,
   923 F. Supp.2d 462 (E.D.N.Y. 2013) ..............................................................................13, 23

Connick v. Thompson,
   563 U.S. 51 (2011)..........................................................................................................15

Cont'l Cas. Co. v. Coastal Sav. Bank,
   977 F.2d 734 (2d Cir. 1992)................................................................................................21

Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.,
   790 F.3d 411 (2d Cir. 2015).................................................................................................6

**Cases**                                                                    **Pages**

Curry v. City of New York,
    No. 10-CV-5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461
    (E.D.N.Y. Dec. 22, 2010) ...........................................................................................8

Curtis v. City of New Haven,
    726 F.2d 65 (2d Cir. 1984)................................................................10, 11, 12, 15

Denney v. Deutsche Bank AG,
    443 F.3d 253 (2d Cir. 2006).................................................................................6

Deshawn E. by Charlotte E. v. Safir,
    156 F.3d 340 (2d Cir. 1998)...............................................................................22

Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment
    Corp.,
    No. 08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938
    (S.D.N.Y. Mar. 2, 2009) ...............................................................................20, 21

Edwards v. City of New York, et. al.,
    14 CV 10058, 2015 U.S. Dist. LEXIS 114039 (S.D.N.Y. Aug. 27, 2015) ............................25

Floyd v. City of New York,
    283 F.R.D. 153 (S.D.N.Y. 2012) .........................................................................18

Friends of the Earth, Inc. v. Laidlaw Envt'l Serv's,
    528 U.S. 167 (2000).........................................................................................6, 7

Gianni Sport Ltd. v. Metallica,
    No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339
    (S.D.N.Y. Dec. 4, 2000).....................................................................................21

Harty v. Simon Property Group, L.P.,
    428 Fed. App'x. 69 (2d Cir. 2011)........................................................................7

Henry v. Lucky Strike Entertainment,
    10 CV 3682, 2013 U.S. Dist. LEXIS 124939 (E.D.N.Y. Sept. 1, 2013) ...................................7

ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp.,
    699 F. Supp. 2d 664 (S.D.N.Y. 2010).................................................................21

Knife Rights, Inc. v. Vance,
    802 F.3d 377 (2d Cir. 2015)...............................................................10, 11, 17, 18

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991)...............................................................................14

**Cases**                                                                           **Pages**

Laird v. Tatum,
    408 U.S. 1 (1972)................................................................................19

Lucente v. Int'l Bus. Machs. Corp.,
    310 F.3d 243 (2d Cir. 2002)...............................................................2

MacIsaac v. Town of Poughkeepsie,
    770 F. Supp. 2d 587 (S.D.N.Y. 2011)...............................8, 10, 11, 12, 15

Marcavage v. The City of New York,
    689 F.3d 98 (2d Cir. 2012)...........................................................7, 22

Marom v. City of New York, et. al.,
    15 CV 2017, 2016 U.S. Dist. LEXIS 28466
    (S.D.N.Y. Mar. 7, 2016) ..................................................................13

McAllister v. New York City Police Department,
    49 F. Supp. 2d 688 (S.D.N.Y. 1999)....................................................14

Monell v. Dep't of Soc. Servs.,
    436 U.S. 658 (1978)........................................................................11

Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.,
    02 CV 10338, 2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003)..................21

New York Times v. Gonzales,
    459 F.3d 160 (2d Cir. 2006)..............................................................20

Nitke v. Ashcroft,
    253 F. Supp.2d 587 (S.D.N.Y. 2003)...................................................19

O'Shea v. Littleton,
    414 U.S. 488 (1974).....................................................................6, 7, 8

K.R. ex rel. Perez v. Silverman,
    08 CV 2192, 2009 U.S. Dist. LEXIS 83143 (E.D.N.Y. Aug. 13, 2009) ..................2

In re REFCO Inc. Securities Litig.: Krys v. Aaron,
    No. 07-md-1902 (JSR), No. 08-cv-7416 (JSR), 2010 U.S. Dist. LEXIS
    142588 (S.D.N.Y. July 19, 2010) .......................................................21

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)...............................................................16

Ricciuti v. N.Y.C. Transit Auth.,
    941 F.2d 119 (2d Cir. 1991)...............................................................2

**Cases**                                                        **Pages**

Roe v. City of New York, et. al.,
   151 F. Supp.2d 495 (S.D.N.Y. 2001)..........................................................................19

Ross v. Bank of Am., N.A. (USA),
   524 F.3d 217 (2d Cir. 2008)...................................................................................6

S.C. Johnson & Son, Inc. v. Clorox Co.,
   241 F.3d 232 (2d Cir. 2001)..................................................................................20

Shain v. Ellison,
   356 F.3d 211 (2d Cir. 2004).....................................................7, 8, 9, 10, 11, 12, 15, 19, 22

Simms v. City of New York, et. al.,
   480 Fed App'x 627 (2d Cir. 2012)............................................................................13

Susan B. Anthony List v. Driehaus,
   134 S. Ct. 2334 (2014)..........................................................................................6

Tasini v. New York Times Corp., Inc.,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002).......................................................................5

Tieman v. City of Newburgh,
   13 CV 4178, 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015)...............13, 16, 23, 24

United Public Workers v. Mitchell,
   330 U.S. 75 (1947)..............................................................................................19

United States Underwriters Ins. Co. v. Ziering,
   06 CV 1130 (JFB) (WDW), 2010 U.S. Dist. LEXIS 88883
   (E.D.N.Y. Aug. 27, 2010)......................................................................................2

United States v. Doherty,
   786 F.2d 491 (2d Cir. 1986)..................................................................................21

Vann v. City of New York,
   72 F.3d 1040 (2d Cir. 1995)..................................................................................16

Vippolis v. Vill. of Haverstraw,
   768 F.2d 40 (2d Cir. 1985)...................................................................................23

Walker v. City of City of New York, et. al.,
   12 CV 5902, 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014)................................13

Walker v. City of New York, et. al.,
   14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)...............13, 16, 24

**Cases**                                                                            **Pages**

Warth v. Seldin,
    422 U.S. 490 (1975) ........................................................................................6

Williams v. City of New York,
    34 F. Supp. 3d 292 (S.D.N.Y. 2014) ...........................................................5, 6, 8

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995) ......................................................................................20

**Statutes**

42 U.S.C. §1983 ....................................................................................5, 11, 22

Fed. R. Civ. P. 12(b)(1) ........................................................................1, 5, 6

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 23

Fed. R. Civ. P. 65(d) ....................................................................................20

U.S. Const. art. III, §1 ..................................................................................6

**Other Authorities**

12 Moore's Federal Practice § 57.04(3) (3rd Ed. 2004) ..............................21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RUBEN AN,

                                  Plaintiff,

                  -against-

THE CITY OF NEW YORK,

                              Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S
MEMORANDUM OF LAW
IN OPPOSITION TO
MOTION TO AMEND**

16 CV 5381 (LGS)

## PRELIMINARY STATEMENT

Defendant City of New York ("the City") hereby respectfully submits its Memorandum of Law in Opposition to plaintiff's motion to amend the complaint. As plaintiff's proposed amended complaint could not withstand a motion to dismiss pursuant to Rules 12(b)(1) and (6), Federal Rules of Civil Procedure, plaintiff's proposed amendments would be "futile," and plaintiff's motion should therefore be denied.

## PROCEDURAL HISTORY

Plaintiff filed his complaint against the City on or about July 6, 2016, seeking injunctive and declaratory relief arising from his arrest of July 28, 2014. On or about August 26, 2016, defendant City moved to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and (6), Federal Rules of Civil Procedure. On February 2, 2017, the Court granted defendant's motion to dismiss without prejudice to plaintiff seeking leave to amend the complaint. On February 23, 2017, plaintiff filed a motion to amend his complaint. Defendant City hereby opposes plaintiff's motion.

# LEGAL STANDARD

"One appropriate basis for denying leave to amend is that the proposed amendment is futile." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). "An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction." United States Underwriters Ins. Co. v. Ziering, 06 CV 1130 (JFB)(WDW), 2010 U.S. Dist. LEXIS 88883, at *8 (E.D.N.Y. Aug. 27, 2010) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). "Thus, 'whether considered in the context of a motion to dismiss or opposition to a motion for leave to amend, the viability of a claim is evaluated by the same legal standard.'" Id., at *8-9 (quoting K.R. ex rel. Perez v. Silverman, 08 CV 2192 (RJD)(SMG), 2009 U.S. Dist. LEXIS 83143 (E.D.N.Y. Aug. 13, 2009)).

## STATEMENT OF FACTS IN PLAINTIFF'S PROPOSED AMENDED COMPLAINT

Plaintiff alleges that he is a 24 year old man who resides in Queens County, New York. (Complaint, ¶9)  For over two years, plaintiff has regularly recorded police officers conducting their official duties.  (Complaint, ¶26)

Plaintiff alleges one past incident in his complaint where three NYPD officers allegedly retaliated against him for recording police activity by arresting him:  On July 28, 2014, in the early evening, three NYPD police officers observed a man lying on the ground next to a phone booth on the sidewalk of East 8th Street and Lafayette Street in Manhattan, New York. (Complaint, ¶11)  The police officers obtained the man's information and called for an ambulance to assist him.  (Complaint, ¶11)

Plaintiff was walking in the vicinity of Lafayette Street and East 8th Street, when he observed the foregoing police interaction.  (Complaint, ¶12)  As the police officers appeared to question the man about an object that he was holding, plaintiff alleges that he approached the

area and, standing on the curb, began to film the police interaction using his cellphone. (Complaint, ¶12)

Upon noticing that plaintiff had begun to film the foregoing events, NYPD officer Becaj allegedly approached plaintiff and informed him that he was "in the proximity of a police investigation." (Complaint, ¶14) P.O. Becaj allegedly then ordered plaintiff to step back. (Complaint, ¶14)

Plaintiff alleges that he moved away from the officers, and P.O. Becaj advised him to step further away, saying that plaintiff was blocking the sidewalk. (Complaint, ¶15) Plaintiff allegedly complied with the request and moved further away, toward the side of the building. (Complaint, ¶15)

Plaintiff alleges that P.O Becaj then told plaintiff that he was going to "wait until people came by and then you'll get issued a summons for disorderly conduct if anyone has to go around." (Complaint, ¶16) In response, plaintiff alleges that he moved away from the officers again, and backed away until he was standing almost up against the side of the building, out of the way of pedestrian traffic. (Complaint, ¶16)

Plaintiff alleges that P.O. Becaj then walked toward plaintiff and informed him that he had "just watched three people divert around you," and asked to see plaintiff's identification. (Complaint, ¶18) When plaintiff did not immediately produce identification, P.O. Becaj allegedly ordered plaintiff to put his phone down, stop filming and produce identification. (Complaint, ¶18) Plaintiff alleges that P.O. Becaj approached him and walked in the middle of the sidewalk, causing several pedestrians to divert around him. (Complaint, ¶18)

Plaintiff alleges that he did not stop recording nor put his cellphone down. (Complaint, ¶19) P.O. Becaj allegedly grabbed plaintiff, twisted plaintiff's arm behind his back, and pushed

him against the building wall. (Complaint, ¶19) P.O.s Novellino and Digiacomo allegedly stopped the conversation that they were having with the man by the phone booth and participated in plaintiff's arrest. (Complaint, ¶19)

Plaintiff alleges that P.O. Becaj grabbed plaintiff's arm, causing plaintiff to drop his cellphone, which stopped recording. (Complaint, ¶20) P.O. Becaj allegedly confiscated plaintiff's cellphone. (Complaint, ¶20)

Plaintiff alleges that he was then handcuffed and placed into an NYPD vehicle. (Complaint, ¶21) Plaintiff was charged with obstruction of governmental administration, two counts of disorderly conduct and resisting arrest. (Complaint, ¶23) Plaintiff was held in police custody for approximately 15 hours. (Complaint, ¶23) One count of disorderly conduct and the obstruction of governmental administration charge were eventually dismissed by the New York County District Attorney's Office. (Complaint, ¶23) Plaintiff was ultimately acquitted by a jury on the remainder of the charges. (Complaint, ¶24)

Plaintiff asserts that he did not record any police interactions for several months after the foregoing arrest and recorded rarely until the conclusion of his trial. (Complaint, ¶28) Since his acquittal, plaintiff alleges that he has gradually resumed filming police activities, but less frequently than prior to his arrest. (Complaint, ¶29) Plaintiff alleges that he has recorded police activities at least twice per month since his acquittal. (Complaint, ¶29)

Plaintiff's complaint alleges no other instances of the NYPD retaliating against him for recording NYPD activities, by arrest or otherwise. (See Complaint)

Plaintiff alleges that the foregoing acts of the three NYPD officers on July 28, 2014, if proven wrongful as alleged, would violate official NYPD policy: "In 2014, the NYPD put out a FINEST Message addressing 'Recording of Police Action by the Public.'" (Complaint, ¶36)

"The FINEST Message states, 'Members of the service are reminded that members of the public are legally allowed to record (by video, audio, or photography) police interactions. These interactions include arrests and other situations.'" (Complaint, ¶36) "It further prohibits NYPD officers from 'interfering with a person's use of recording devices to record police interactions.'" (Complaint, ¶36) "Finally, it acknowledges, 'intentional interference such as blocking or obstructing cameras or ordering the person to cease…violates the First Amendment.'" (Complaint, ¶36) "Upon information and belief, the NYPD's practice and custom of interfering with the rights of individuals who seeks to record police activity violates this FINEST Message." (Complaint, ¶36)

Plaintiff seeks a "permanent injunction restraining the City of New York and its employees from punishing or otherwise retaliating against the Plaintiff or any other individual who, without interfering with police activity, records or attempts to record police officers who are performing official duties in a public place." (Complaint, Prayer for Relief, at B)

Plaintiff also seeks a "declaratory judgment that the City violated the Plaintiff's rights under the First Amendment to the Constitution of the United States and 42 U.S.C. §1983, and that Mr. An's attempted recording of NYPD officers on July 28, 2014 was an act protected by the First Amendment to the Constitution." (Complaint, Prayer for Relief, at A)

## ARGUMENT

### POINT I

### PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

**A.    Legal Standard**

"An objection to standing is properly made on a Rule 12(b)(1) motion." Williams v. City of New York, 34 F. Supp. 3d 292, 294 (S.D.N.Y. 2014) (quoting Tasini v. New York Times

5

Corp., Inc., 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002)). "Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)). "Article III of the Constitution limits the jurisdiction of federal courts to the resolution of 'cases' and 'controversies.'" Williams, 34 F. Supp.3d at 294 (quoting U.S. Const. art. III, §1). "The doctrine of standing gives meaning to these constitutional limits," Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014), and requires plaintiff to "allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975).

"Standing for an equitable claim must appear on the face of the complaint in order to survive a motion to dismiss." O'Shea v. Littleton, 414 U.S. 488 (1974). "A plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envt'l Serv's, 528 U.S. 167, 185 (2000).

"'A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action.'" An v. City of New York, 16 CV 5381 (LGS), 2017 U.S. Dist. LEXIS 14857, at *6 (S.D.N.Y. Feb. 2, 2017) (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416-17 (2d Cir. 2015)). "'The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue.'" Id. "When seeking injunctive relief against a municipality, a plaintiff has standing only if he can 'carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the

6

challenged official conduct.'"  Id. at *7 (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983)).

To establish standing, a plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envt'l. Serv's. (TOC), Inc., supra, 528 U.S. at 180-181. "[I]n order to demonstrate that [he has] standing to pursue claims for injunctive relief, plaintiff must show a real and immediate threat of repeated injury." Henry v. Lucky Strike Entertainment, 10 CV 3682 (RRM), 2013 U.S. Dist. LEXIS 124939, at *42 (E.D.N.Y. Sept. 1, 2013). An "abstract injury is not enough." Shain, 356 F.3d at 215.

Under the leading case of City of Los Angeles v. Lyons, supra, "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Shain, 356 F.3d at 216. "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." Harty v. Simon Property Group, L.P., 428 Fed. App'x. 69, 71 (2d Cir. 2011) (citing Lyons at 105). In fact, plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way." Marcavage v. The City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (quoting Lyons at 111). One past incident involving a particular plaintiff and the police has been found to be insufficient to confer standing. City of Los Angeles v. Lyons, supra.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea, supra, 414 U.S. at 495-96. "In other words, [a plaintiff] asserting an injunction . . . must

allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." Curry v. City of New York, No. 10-CV-5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461, at *8 (E.D.N.Y. Dec. 22, 2010) (internal citation omitted). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Shain, 356 F.3d at 215 (quoting O'Shea, 414 U.S. at 494).

The seminal case in this regard, Lyons, supra, "occupies much of the territory" related to a citizen's standing to seek an injunction against police practices surrounding arrests. Williams, supra, 34 F. Supp.3d at 296 (citing Shain, supra, 356 F.3d at 215). In Lyons, the plaintiff alleged that he feared again being subjected to an illegal chokehold, and given the extensive use of chokeholds by the Los Angeles police, that he should be afforded standing to seek injunctive relief. However, the United States Supreme Court held that the risk that plaintiff himself would come into contact with the police and be subjected to a subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. Id., at 109; see also MacIsaac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (plaintiff's claim that he would be stopped, arrested and subjected to a taser gun again was speculative, and injunctive relief therefore denied).

**B.      Likelihood of Future Harm**

Plaintiff fails both prongs of the Shain test that requires that he establish "a likelihood of future harm and the existence of an official policy or its equivalent" for standing to be conferred. With respect to the "likelihood of future harm" prong, plaintiff relies on just one past incident, the events of July 28, 2014, wherein he alleges that he was retaliated against and arrested as a

result of his photographing an NYPD police interaction.[1]  Lyons stands for the proposition that one past police interaction is insufficient to confer standing in arrest situations.

Likewise, that there will be another incident where plaintiff records a police interaction, acts lawfully and the officers allegedly violate NYPD policy and retaliate against plaintiff by arresting him without probable cause, as alleged here, is completely "speculative," "hypothetical," "abstract" and "conjectural" in nature.  No facts are alleged by plaintiff supporting a claim of future harm other than the one past incident of July 28, 2014.

Plaintiff relies in substantial part on his factual allegation that he regularly films police activity—at least twice per month— and has since "the conclusion of his criminal trial" in July, 2015.  (Complaint, ¶24, 29)  However, the fact that plaintiff, by his own admission, has filmed police activities a minimum of approximately almost forty times since the conclusion of his criminal trial, without retaliation of any kind by the NYPD, completely belies his assertion that there is a "likelihood of future harm."  See Lyons, 461 U.S. at 109 (requiring that plaintiff allege that he is "realistically threatened by a repetition of [his] experience…" for standing to lie).  Simply, when the smoke clears, plaintiff in truth is only relying on the one past incident, his arrest of July 28, 2014, to support his standing argument as to the "likelihood of future harm" prong of the Shain standing test, as that is the only incident set forth in his complaint in which he was allegedly retaliated against.  Since there does not appear to be a dispute, nor can there be, that standing is not conferred solely as a result of a single past injury, Article III standing clearly does not lie in this case.

Plaintiff completely fails to meet his burden of demonstrating a "likelihood of future harm."  This, by itself, defeats plaintiff's claim for injunctive relief as pled, since he lacks Article

---

[1] Plaintiff's proposed amended complaint does not even plead a "likelihood of future harm," but rather contends that he faces "a high risk of future of harm."  (Complaint, ¶26)

III standing to seek the injunction requested. Plaintiff's proposed amendments are thus "futile" for this reason alone.

## C.     Official Policy or Its Equivalent

Plaintiff also fails to meet the "official policy" prong of the Shain standing test. Plaintiff acknowledges in his proposed amended complaint that the NYPD's official policy as to allowing persons to record police interactions is constitutional and proper. (E.g. Complaint, ¶36, referring to an NYPD FINEST Message of August 6, 2014). Thus, plaintiff acknowledges that the NYPD's official policy is constitutionally proper, but, rather, contends that the NYPD's "official policy" was violated by the three officers' acts on July 28, 2014 in this one circumstance.

The existence of a proper policy by itself defeats plaintiff's standing argument, as the NYPD's "official policy" is admittedly entirely constitutional as it relates to citizens' recording of police interactions. See Curtis v. City of New Haven, 726 F.2d 65 (2d Cir. 1984). In Curtis, the plaintiff sought injunctive relief arising from a City of New Haven police officer's alleged negligent use of mace. Curtis, 726 F.2d at 65-66. Applying Lyons, the Second Circuit dismissed such injunctive relief claims based on standing. In part, the Curtis court reasoned that "[t]he City's General Orders do not order or authorize police officers to act the way the juries found that they did here…and the police officers appear to have violated the General Orders…" Id. at 68. "The General Orders of the City's police department…do not authorize the use of mace in the manner it was used in this case." Id.

The court in MacIsaac, supra, recognized this principle. "[A] close reading of Lyons indicates that only if Lyons had made the 'unbelievable assertion that the City either orders or authorizes application of the chokeholds where there is no resistance or other provocation' would he have had equitable standing." MacIsaac, 770 F. Supp.2d at 597 (quoting Lyons at 106, n. 7). The Second Circuit in Knife Rights, Inc. v. Vance, 802 F.3d 377 (2d Cir. 2015), recently seemed

to infer that anything other than a claim that there was a constitutionally improper policy of a municipality was insufficient to confer standing as it distinguished <u>Lyons</u> in reaching its decision by noting that Lyons had not alleged a "blanket application of chokeholds by arresting Los Angeles police officers." <u>Id</u> at 385.

The reasoning of the Second Circuit in <u>Curtis</u> and District Court in <u>MacIsaac</u> apply equally to the argument being made by the plaintiff Ruben An herein. An contends that the NYPD has a constitutionally adequate policy, but rather contends that the officers on July 28, 2014 violated it in connection with his subject arrest. Thus, under <u>Curtis</u> and <u>MacIsaac</u>, the fact that An merely argues that the officers on July 28, 2014 violated official NYPD policy in arresting him, rather than that the underlying policy is infirm, defeats his standing argument as to the "official policy or its equivalent" prong of the <u>Shain</u> test.[2]

---

[2] In its decision granting defendant City's motion to dismiss in this case, the Court stated the "parties assume that a plaintiff establishes an official policy or its equivalent for purposes under <u>Shain</u> and <u>Lyons</u> whenever that plaintiff shows an official policy or custom for purposes of stating a §1983 claim for municipal liability under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978),…" and noted that the <u>MacIsaac</u> court had observed "that <u>Lyons</u> provides a 'much narrower definition of an 'official policy' than <u>Monell</u> and holding that plaintiff lacked standing on a failure to train or supervise claim.'" <u>An</u>, at *8, n. 1 (citing <u>MacIsaac</u> at 597, 601). Although defendant did not cite to <u>MacIsaac</u> on this point in the motion to dismiss briefing, the <u>MacIsaac</u> court's reasoning was based on the Second Circuit's decision in <u>Curtis</u>, which was the basis for defendant's argument that plaintiff cannot establish standing where there existed a constitutionally proper policy. Based on <u>Curtis</u>, defendant also argued that plaintiff could also not establish standing where he relied on a failure to train or supervise theory, as plaintiff had provided not authority for such a proposition. (Defendant's Memorandum of Law at pp. 7-8; defendant's Reply Memorandum of Law at pp. 5, 8) Based on <u>Lyons</u>, <u>Curtis</u>, <u>MacIsaac</u> and <u>Knife Rights</u> as argued herein, the definition of a "official policy or its equivalent" is clearly narrower than a claim for municipal liability under <u>Monell</u>, as was found by the <u>MacIsaac</u> court. (See <u>MacIsaac</u> at 597, 601)

D.    **Custom or Usage**

Plaintiff refers to civil complaints in other cases, newspaper articles and a purported CCRB report that has not been issued, in order to argue that "the practice of arresting people who record NYPD officers performing their official duties in public is so 'widespread' and 'pervasive' that it constitutes a de facto custom[,]" and that "the City's failure to train or supervise its police officers 'to respect individuals' First Amendment rights' amounts to deliberate indifference[,]" is sufficient to meet the "official policy or its equivalent" prong of the Shain test.  See An, at *9.  Even if the Court finds that Lyons or Curtis is not controlling here and/or rejects the reasoning of the MacIsaac court that there must be "express authorization" for or "blanket application of" the challenged conduct for standing to lie under the "official policy or its equivalent" prong of the Shain test, plaintiff still has failed to sufficiently allege an "official policy or its equivalent."

Plaintiff alleges that the City has an unlawful "practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware."  Brandon v. City of New York, 705 F. Supp.2d 261, 276-77 (S.D.N.Y. 2010).[3]  In order to prove such a municipal liability theory, plaintiff must establish that this practice was so manifest as to imply the acquiescence of policy-making officials.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion).

---

[3] Plaintiff's proposed amended complaint cites civil complaints and other materials from 2004-present, although this court's decision states that the relevant time period was to be determined "at the time of plaintiff's arrest."  See An, at * 10.  Even *assuming arguendo* that the civil complaints and other materials in plaintiff's proposed amended complaint which post-date plaintiff's arrest of July 28, 2014 are relevant to the existence of a "policy or its equivalent," they are certainly not relevant to whether there was a violation of Monell as to plaintiff's underlying arrest of July 28, 2014.  See Point IV, infra.

"At this stage,...,[p]laintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief. Tieman v. City of Newburgh, 13 CV 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *38 (S.D.N.Y. Mar. 26, 2015). As in his original complaint, plaintiff attempts to establish the existence of an unlawful "custom or usage" principally based upon civil complaints in other cases, news reports and a purported CCRB report that has not issued. However, it does not appear that any of the civil lawsuits have resulted in an "adjudication of liability," which has been a basis of courts to reject the argument that the mere existence of civil complaints is sufficient to plead an unlawful a "custom or usage." See Simms v. City of New York, et. al., 480 Fed App'x 627, 630 (2d Cir. 2012) ("[A]ll that the Complaint's reference to the other action is that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as Simms alleges here, not that those violations actually occurred.") An, at *10; Tieman, at *48; Walker v. City of New York, et. al., 14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410, at *19-24 (S.D.N.Y. July 14, 2015); Walker v. City of City of New York, et. al., 12 CV 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *6 (S.D.N.Y. Mar. 18, 2014); Calderon v. City of New York, 138 F. Supp.3d 593, 613 (S.D.N.Y. 2015); Collins v. City of New York, et. al., 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013); Marom v. City of New York, et. al., 15 CV 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *73 (S.D.N.Y. Mar. 7, 2016).

Judge Ramos' decision in Walker, supra, is directly on point here. In that case, plaintiff attempted to support his municipal liability theory by listing 36 other civil complaints over a 13 year period. Walker, 2015 U.S. Dist. LEXIS 91410, at *19. Plaintiff's municipal liability claims based on an alleged "custom or usage" were dismissed upon defendant's motion to dismiss. Judge Ramos reasoned, in part, that there were no findings or adjudication of liability in any of

those cases.  Id, at *19-24.  "Indeed, although it is routine for courts to take judicial notice of court documents, they do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Id. at *24-25 (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)).  "It is not within this Court's purview to assess the veracity of either the claims of outside plaintiffs, or the defenses presented against them in cases that have settled or are pending before other judges."  Id., at *25.

In plaintiff's proposed amended complaint, he lists a number of civil complaints from 2004-present (a 13 year period) purportedly making similar allegations to those brought in this case.  However, none of the cited cases resulted in any findings or adjudications against the City,[4] and said lawsuits are either still pending or have been settled without any admission of liability.  As such, the listing of such civil complaints is not sufficient to establish an "official policy or its equivalent."

Plaintiff also relies on a series of newspaper articles.  However, newspaper articles are hearsay and should not be considered.  McAllister v. New York City Police Department, 49 F. Supp. 2d 688, 705, n. 12 (S.D.N.Y. 1999).  The newspaper articles are also "too generalized, isolated and attenuated to support an inference that there existed a pervasive unlawful municipal custom or policy."  See Means v. City of New York, et. al., 15 CV 4855 (KBF), 2016 U.S. Dist. LEXIS 45865, at *18 (S.D.N.Y. April 5, 2016).  Further, the articles represent "a handful of instances the specifics of which are not clear."  See Perez v. New York City Dep't of Correction, 10 CV 2697 (RRM)(RML), 2012 U.S. Dist. 121440, at *8-10 (E.D.N.Y. Aug. 27, 2012).[5]

---

[4] Plaintiff makes reference to one substantiated CCRB finding in ¶38(n) of his proposed amended complaint.  However, plaintiff does not even allege what the nature of the violation such substantiated CCRB complaint was for.

[5] For example, plaintiff relies on media reports that litigation simply exists (Complaint, ¶ 32(ee) and (kk)), and articles that report facts distinguishing the event from plaintiff's claim or which do

Likewise, plaintiff's reference to a purported CCRB report that has not issued is hearsay on various layers of hearsay and should not be considered either.

Also, the existence of the FINEST Message (see Complaint, ¶36) demonstrates that there was no acquiescence of NYPD "policy making officials" to any unlawful custom or usage under Praprotnik.

**E.      Failure to Train or Supervise**

As to plaintiff's failure to train or supervise theory[6], the United States Supreme Court has stated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). In its decision on defendant's motion to dismiss, this Court has stated that in order to proceed on a failure to train or supervise theory, plaintiff must prove deliberate indifference, An, at *11, and that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." An, at *11 (quoting Connick, at 61). "Deliberate indifference under a failure to train or supervise theory has three requirements: "First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff

---

not support plaintiff's claims. (Complaint, ¶32 (ff) ("The NYPD's Transit Bureau Investigations Unit and the Civilian Complaint Review Board are reviewing the video"), Complaint ¶ 32(hh) (the protesters were on private property) and Complaint ¶ 32(ii) (the arresting officer was convicted for falsifying statements)).

[6] As seen, plaintiff has not cited any authority that an alleged failure to train or supervise under Monell, can be sufficient to demonstrate a "policy or its equivalent" under the Shain standing test, especially in light of plaintiff's admission in ¶ 36 of his proposed amended complaint that the NYPD's policy is completely constitutional. Under Lyons, Curtis and MacIsaac, plaintiff should not be permitted to proceed under such a theory.

must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. "[A] failure to act 'satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberatively indifferent to the need." Id., at *12 (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)).

"An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Plaintiff again attempts to satisfy his burden by reference to various civil lawsuits, newspaper articles and a CCRB article that has not issued (many of which post-date plaintiff's date of arrest of July 28, 2014), and not actual constitutional violations. Thus, plaintiff must plead that the City has failed to investigate these incidents in order to sufficiently plead such failure to train or supervise. Walker, supra, 2015 U.S. Dist. LEXIS 91410, at *29 ("although Plaintiff alleges a pattern of allegations about similar misconduct, he does not specifically claim that the City failed to investigate the list of lawsuits."); Tieman, supra, at *61-63 (a plaintiff may plead [in order to prove deliberate indifference] 1) that there was  pattern of allegations of or complaints about similar unconstitutional activity and 2) that the municipality consistently failed to investigate those allegations); see An, at *13-14.

Here, plaintiff's proposed amended complaint is completely devoid of any allegation that the City failed to investigate the incidents that are the subject of the other civil complaints that are listed in plaintiff's proposed amended complaint, including his own. (See Complaint, ¶25)

(Plaintiff only contends that the officers involved in his arrest were not disciplined). To the contrary, plaintiff alleges that the CCRB is investigating such claims. (See Complaint, ¶40) As such, plaintiff still has failed to sufficiently plead "deliberate indifference" based upon the City's response to allegations in other incidents that have not resulted in a finding or adjudication of liability.[7]

**F.     Plaintiff's Remaining Arguments in Opposition to Defendant's Motion to Dismiss**

Plaintiff principally cited to four judicial decisions to support his standing argument in his opposition to defendant's motion to dismiss, and defendant will address them here should plaintiff raise them again in reply. Plaintiff raised Knife Rights, supra, which was the only Circuit level authority relied on by plaintiff to support his standing argument upon defendant's motion to dismiss. However, Knife Rights does not support plaintiff's argument herein. Knife Rights involved a constitutional challenge to a criminal statute on the grounds of vagueness as applied to those plaintiffs' possession of certain knives. The lawsuit was brought against a prosecutorial office only. The Second Circuit specifically stated that it was deciding that challenge only in "the context of pre-enforcement challenges to criminal statutes,..." id. at 384, which is not what is being challenged by the plaintiff Ruben An in this case.

In fact, the Second Circuit in Knife Rights distinguished Lyons on a number of grounds pertinent to the standing issue herein. First, the Second Circuit reasoned that the plaintiffs in Knife Rights had expressed the intent to again violate the law as applied to them in the future and that they were being threatened with future prosecution if they did so. Id. at 385-386. An,

---

[7] In ¶37 of his proposed amended complaint, plaintiff seems to acknowledge that the NYPD does train its officers on bystanders' rights to record police interactions, and the NYPD does in fact train. Plaintiff's mere assertion that the NYPD does not train "sufficiently" on this issue is insufficient to identify a "specific deficiency" in the NYPD's training program under Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004). This is a separate basis to reject plaintiff's argument that there is an unconstitutional "policy or its equivalent."

similar to the plaintiff in <u>Lyons</u>, has to the contrary alleged that he intends to follow the law in the future. (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at p. 11) Second, as seen, the Second Circuit in <u>Knife Rights</u> also distinguished <u>Lyons</u> by noting that Lyons had not alleged a "blanket application of chokeholds by arresting Los Angeles police officers." <u>Id</u>. An, similar to Lyons, does not allege the blanket denial of the right to record police activity by NYPD officers either, but, rather it has happened just once in all the times that he has recorded, and that the NYPD's policy is constitutional. Third, the Second Circuit also distinguished <u>Lyons</u> in <u>Knife Rights</u> on the basis that <u>Lyons</u> involved a claim which "focused on the actions of law enforcement," and was not a "vagueness challenge" to a statute. <u>Id</u>. at n. 6. An's complaint of course focuses on the actions of law enforcement by the NYPD, bringing his claims into the sphere of law enforcement and <u>Lyons</u>, not cases addressing statutory challenges.

Plaintiff also cited <u>Aguilar v. Immigration and Customs and Enforcement Division</u>, 811 F. Supp.2d 803 (S.D.N.Y. 2011), in support of his standing argument and in opposition to defendant's motion to dismiss. Defendant would first point out that this case is fully distinguishable on the basis that it is outside the sphere of arrests as well. Further, the Court based its decision, in part, on the grounds that the defendant federal agents had "explicitly threatened to return to two of the [plaintiffs'] homes in which they conducted operations," <u>id</u>., at 827, and actually had returned on multiple occasions to one of plaintiff's homes after the alleged underlying constitutional violation. <u>Id</u>. This is markedly different than the circumstance presented here, where, indisputably, defendant has taken no actions as to the plaintiff Ruben An since the subject arrest of July 28, 2014, much less any improper actions.

Plaintiff also cited in his opposition to defendant's motion to dismiss to Judge Scheindlin's decision in <u>Floyd v. City of New York</u>, 283 F.R.D. 153 (S.D.N.Y. 2012), in the stop

and frisk class action litigation, as support for his standing argument. There are a number of reasons why Floyd is inapposite to the case herein. First, it was not an arrest case. Second, there was an admission by the defendant in that case that at least one plaintiff had standing. Id. at 169. Third, the court found that there were "repeated incidents" in the case of one plaintiff, four alleged improper stops. Id. This is unlike An's allegations herein, where he alleges that his constitutional rights were violated just once arising out of the past incident of July 28, 2014.

The fourth decision relied on by plaintiff in support of his standing argument in his opposition to defendant's motion to dismiss, Judge Sweet's District Court decision Roe v. City of New York, et. al., 151 F. Supp.2d 495 (S.D.N.Y. 2001), is pre-Shain. As seen, Shain is the leading standing case in this Circuit applicable to equitable claims arising out of arrests. Roe is therefore of limited precedential value.

Plaintiff also argued in his opposition to defendant's motion to dismiss that since his filming of police interactions has been subjectively "chilled," that such confers standing. Plaintiff is incorrect for a number of reasons. Initially, the only case that plaintiff cited for such a proposition, Nitke v. Ashcroft, 253 F. Supp.2d 587 (S.D.N.Y. 2003), involves a challenge to a statute, and does not arise out of an arrest. Further, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" Laird v. Tatum, 408 U.S. 1, 13-14 (1972) (quoting United Public Workers v. Mitchell, 330 U.S. 75, 89 (1947)). There is no "present objective harm" alleged in plaintiff's complaint nor any "threat of specific future harm." As seen, although plaintiff may subjectively believe that his alleged right to film police interactions has been "chilled," there is nothing in the proposed amended complaint, as it relates to plaintiff, other than the one past incident, the events

of July 28, 2014.  As such, there is no "present objective harm" or a "threat of specific future harm" sufficient to confer standing in this case.

## POINT II

### PLAINTIFF'S  PRAYER  FOR  INJUNCTIVE
### RELIEF IS NOT ACTIONABLE

Plaintiff's prayer for injunctive relief is not actionable under Rule 65(d), Fed. R. Civ. P. "Under [Federal Rule of Civil Procedure] 65(d), an injunction must be more specific than a simple command that the defendant obey the law." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232 (2d Cir. 2001).  The injunction (and advisory opinion) that plaintiff seeks is an "injunction restraining the City of New York and its employees from punishing or otherwise retaliating against the Plaintiff or any other individual who, without interfering with police activity, records or attempts to record police officers who are performing official duties in a public place."  (Complaint, Prayer for Relief, at B)  However, plaintiff's prayer for injunctive relief is merely a request for the Court to command the defendant to obey the law as plaintiff perceives it to be.  This is not actionable, and for this reason alone, plaintiff's injunctive relief claims should be dismissed as well.

## POINT III

### PLAINTIFF'S  CLAIM  FOR  DECLARATORY
### RELIEF SHOULD BE DISMISSED

A district court may issue a declaratory judgment in "a case of actual controversy within its jurisdiction."  New York Times v. Gonzales, 459 F.3d 160, 165 (2d Cir. 2006).  "Federal courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'"  Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp., No. 08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938, at *35 (S.D.N.Y. Mar. 2, 2009) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)); see also Chiste v.

Travelocity.com, LP, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010).  In deciding whether to exercise this jurisdiction, however, the Second Circuit has held that courts should consider "whether a declaratory judgment will [i] 'serve a useful purpose in clarifying and settling the legal relations in issue'; or [ii] 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Dolphin Direct, 2009 U.S. Dist. LEXIS 21938, at *35 (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)).

As seen, courts require an "actual controversy between the parties" for declaratory relief to lie.  In re REFCO Inc. Securities Litig.: Krys v. Aaron, No. 07-md-1902 (JSR), No. 08-cv-7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir. 1986)).  To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

Past acts do not constitute an appropriate basis for invoking declaratory relief.  Chiste v. Travelocity.com, LP, supra, 756 F. Supp. 2d at 407 ("There is no basis for declaratory relief where only past acts are involved.") (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc., 02 CV 10338 (SAS), 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003)); Gianni Sport Ltd. v. Metallica, No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339, at *11 (S.D.N.Y. Dec. 4, 2000) ("Any damages that are due have already accrued.  Therefore, Gianni will not 'avoid the accrual of avoidable damages by means of this action.'"); 12 Moore's Federal Practice § 57.04(3) (3rd Ed. 2004) ("Declaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued").

In fact, a "[d]eclaratory judgment, like an injunction, is a form of prospective relief that requires a plaintiff [in order to confer standing] to show 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" <u>An</u>, at *14-15 (quoting <u>Marcavage v. City of New York</u>, 689 F.3d 98, 103 (2d Cir. 2012) (internal citations omitted). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's injury requirement but must show a likelihood that he or she will be injured in the future." <u>Id</u>. (quoting <u>Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 344 (2d Cir. 1998)). "A plaintiff therefore must [also] show 'an official policy or its equivalent.'" <u>Id</u>. (citing <u>Shain</u> at 216) (internal citations omitted).

Plaintiff seeks a "declaratory judgment that the City violated the Plaintiff's rights under the First Amendment to the Constitution of the United States and 42 U.S.C. §1983, and that Mr. An's attempted recording of NYPD officers on July 28, 2014 was an act protected by the First Amendment to the Constitution." (Complaint, Prayer for Relief, at A)

However, there is no present or immediate controversy between the parties, as the entirety of the dispute between plaintiff and defendant is based on the past acts that occurred on July 28, 2014. That there might be another incident involving the parties of the same nature is mere speculation. There is not a sufficient and immediate controversy to warrant declaratory relief. As seen above, plaintiff additionally cannot establish that he "will again be wronged in a similar way" or "an official policy or its equivalent" sufficient for there to be standing to seek declaratory relief. As such, a claim for declaratory relief does not lie under these circumstances, and plaintiff's request for declaratory relief should be denied and his claim dismissed.

## POINT IV

### PLAINTIFF HAS NOT SUFFICIENTLY PLED MUNICIPAL LIABILITY ARISING OUT OF THE UNDERLYING ARREST OF JULY 28, 2014

Plaintiff's complaint should also be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly, at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 at 557).

In order to prove municipal liability, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . .Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). Courts have consistently stated that civil complaints arising out of other incidents that post-date the underlying act of misconduct cannot be used to prove municipal liability. Tieman, supra, at 48-49 (quoting Collins, supra, at 479) (a 'litany of other police-misconduct cases' discussed in plaintiff's complaint 'were insufficient to make a plausible case for Monell liability,' because they…post-dated the alleged misconduct in the case at hand…"); see An at *10 (finding no widespread custom "at the time of plaintiff's arrest").

Here, plaintiff purports to cite other similar civil complaints from the period of 2004 forward against NYPD. (Complaint, ¶ 32) Taking the allegations as true, however, plaintiff

cites just eleven (11) civil complaints with often dissimilar facts in the 10 ½ year period of time from 2004 through the date of his arrest, July 28, 2014, against the NYPD, none of which, as seen, resulted in an adjudication of liability against the City. (See Complaint, ¶¶ 32(a), (b), (c), (d), (e), (f), (g), (h), (j), (k) and (r))[8] This is similar to the number of lawsuits which this Court stated in its decision on defendant's motion to dismiss would be insufficient to sufficiently plead the existence of a municipal custom or usage. See An, at *9-11. In fact, this Court cited to Calderon, supra, which found that 16 such lawsuits in a 12 year period was insufficient, and Tieman, supra, which found that thirteen lawsuits in a four year period was insufficient. The number of lawsuits cited in the proposed amended complaint pre-July 28, 2014, is also significantly less than the 36 that were found to be insufficient by Judge Ramos in Walker, supra, 2015 U.S. Dist. LEXIS 91410.[9] Thus, since plaintiff clearly has failed to adequately plead a claim of municipal liability based on a custom or usage theory as to his underlying arrest, plaintiff's custom or usage municipal liability claim should be dismissed for this reason alone as it lacks "plausibility."

Likewise, the aforementioned other purportedly civil lawsuits do not establish "deliberate indifference" as required by the Court in its decision granting defendant's motion to dismiss plaintiff's failure to train or supervise claim. An, at *13-14. Simply, eleven lawsuits over a 10 ½ year period of time, none of which resulted in an adjudication against the City, (as well as a few vague newspaper articles) are insufficient and still considerably less than the evidence cited

---

[8] The lawsuit cited in ¶32(i) arises out of alleged acts of the MTA Police.

[9] Although plaintiff makes reference to an indeterminate number of CCRB complaints from 2014, without identifying the dates of any of them, plaintiff identifies the source of this information as a 2015 report of CCRB. Thus, similar to the civil complaints which post-date plaintiff's arrest, this source of information post-dates plaintiff's arrest, and cannot be the basis for plaintiff's "custom or usage." (See Complaint, ¶40 and n. 76 thereto)

by the courts in the decisions cited by plaintiff in his opposition to defendant's motion to dismiss, <u>Edwards v. City of New York, et. al.</u>, 14 CV 10058 (KBF), 2015 U.S. Dist. LEXIS 114039 (S.D.N.Y. Aug. 27, 2015) and <u>Bertuglia v. City of New York</u>, 839 F. Supp.2d 703, 737 (S.D.N.Y. 2012), where motions to dismiss were denied.[10]  <u>See</u> <u>An</u>, at *12-13.  Likewise, plaintiff makes no allegation of any failure to investigate these incidents as required.  <u>See</u> <u>An</u>, at *13-14.  As such, plaintiff has failed to sufficiently plead "deliberate indifference" related to his allegation that a failure to train or supervise caused his arrest of July 28, 2014.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the complaint should be denied.

Dated:        New York, New York
              March 16, 2017

> ZACHARY W. CARTER
> Corporation Counsel of the
>   City of New York
> *Attorney for Defendant City of New York*
> 100 Church Street, Room 3-133b
> New York, New York 10007
> (212) 356-3519
>
> By:      _____/s/_____
>
>        MARK D. ZUCKERMAN
>        Senior Counsel

---

[10] As set forth in n. 8 above, plaintiff's allegation that there were an indeterminate number of similar CCRB complaints before his arrest is based on a source that post-dates his arrest.  (See Complaint, ¶40 and n. 76 thereto)   As such, it is not pertinent plaintiff's failure to train or supervise allegations either.