UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
```
RUBEN AN,                                           :
                                        Plaintiff,  :
                                                    :
            -against-                               :          16 Civ. 5381 (LGS)
                                                    :
THE CITY OF NEW YORK,                               :          **OPINION AND ORDER**
                                       Defendant.   :
```
-----------------------------------------------------------X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 06/01/17

LORNA G. SCHOFIELD, District Judge:

Plaintiff Ruben An moves for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). The Proposed Amended Complaint (the "Complaint") alleges Defendant City of New York (the "City") has an unconstitutional policy of permitting NYPD officers to interfere with individuals who record them performing their official duties in public. For the following reasons, the motion is granted.

## I.    BACKGROUND

Familiarity with the allegations in the initial complaint, including those regarding Plaintiff's arrest and the procedural history, is assumed. *See An v. City of New York*, No. 16 Civ. 5381, 2017 WL 455434, --- F. Supp. 3d ---- (S.D.N.Y. Feb. 2, 2017). The following is based on the Complaint, and all factual allegations are assumed to be true.

### A.    Plaintiff's Recording Activity and Arrest

Plaintiff "regularly record[s] police officers conducting their official duties in public." He is also involved "with civic groups that organize their members to observe and film police officers in public" and has "taught community trainings on filming police officers."

On July 28, 2014, Plaintiff began to film three NYPD officers talking to an individual on a sidewalk in Manhattan. The officers then arrested Plaintiff, who was also standing on the

sidewalk, and he was charged with four counts of violating state law.  Two counts were

dismissed before trial, and in July 2015, a jury acquitted him of the other two counts.  None of

the NYPD officers involved in Plaintiff's arrest were disciplined for their treatment of Plaintiff.

Due to the arrest, Plaintiff did not record any police interactions for several months and

then began to record "only rarely" until the conclusion of his trial.  Plaintiff "gradually resumed"

recording after his trial and now records "usually at least two times per month."  However, he

records less frequently than before his arrest because he "fears future pretextual arrests and

prosecution" for recording police officers.  His "ongoing filming of public police activity" will

"frequently bring him into contact with police officers in scenarios similar to the interaction he

observed" the day he was arrested.

### B.        The FINEST Message and Other Alleged Incidents

In August 2014, the NYPD issued a document -- referred to as a FINEST Message -- that

addresses "Recording of Police Action by the Public."  It states, "Members of the service are

reminded that members of the public are legally allowed to record (by video, audio, or

photography) police interactions.  These interactions include arrest and other situations."  The

Message prohibits NYPD officers from "interfer[ing] with a person's use of recording devices to

record police interactions" and states that "intentional interference such as blocking or

obstructing cameras or ordering the person to cease . . . violates the First Amendment."  The

Complaint alleges that the City has "not instituted any training, monitoring, or supervision to

ensure that officers comply with" the FINEST Message.

The Complaint further alleges that as a result of the City's failure to train or supervise,

NYPD officers routinely arrest or threaten to arrest individuals who record police activity.  In

support, the Complaint cites 47 lawsuits filed in the United States District Court for the Eastern

2

and Southern Districts of New York between the years 2012 and 2016, as well as a few lawsuits before 2012, in which the plaintiff alleged that he or she was arrested while recording NYPD officers or that the officers interfered with the recording.   The Complaint also cites 18 news articles published during the same time period, as well as a couple articles published earlier, that concern allegations of police interfering with individuals who record officers in public.   The Complaint alleges that "these examples represent only a small fraction of the actual number of recent instances" in which NYPD officers have interfered with the First Amendment rights of individuals recording police activity.

The New York City Civilian Complaint Review Board ("CCRB"), which investigates complaints against NYPD officers, found that 201 "fully investigated complaints" decided in 2014 and 2015 contained "one or more allegations of police interference with civilian recording of police activity; search of a device for a recording of police activity; deletion of a recording of police activity; and/or damage to or destruction of the recording device."  In 2016, CCRB received at least 77 reports containing allegations of officers interfering with recordings; it also received 23 allegations relating to "unlawful search of an electronic device" and 10 allegations relating to "deleting electronic information off a device."

Based on reports of police interference, the CCRB in or before October 2016 decided to prepare an "Issue-Based Report," which it calls the "bystander report."  The CCRB qualifies its Issue-Based Reports as follows:  "The CCRB's investigation of complaints and data analysis sometimes reveals problems that go beyond specific acts of misconduct and suggest the need for a change in police department policy, procedures, or training.  When this occurs, the board notifies the police commissioner and recommends solutions."  The CCRB indicated that it expected to issue the bystander report by the end of 2016.  As of the date of Plaintiff's motion,

the report had not been released.

## II.    STANDARD

"Leave to amend should be 'freely give[n] . . . when justice so requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (some internal quotation marks omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (internal quotation marks omitted).

The City argues the Complaint could not withstand a motion to dismiss pursuant to Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. In deciding either such motion, a court accepts as true all of a complaint's factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Tr. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (stating standard for Rule 12(b)(6) motion and noting the "same standards apply to dismissals for lack of standing" under Rule 12(b)(1)).

## III.   DISCUSSION

### A.    Standing to Seek Injunctive Relief

The Complaint adequately alleges that Plaintiff has standing to seek injunctive relief. "[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When seeking injunctive relief

against a municipality, a plaintiff has standing only if he can "carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983)).  This requires a plaintiff to show "both [1] a likelihood of future harm and [2] the existence of an official policy or its equivalent." *Id.* at 216 (emphasis omitted) (citing *Lyons*, 461 U.S. at 105–106).

### 1.  Official Policy or Its Equivalent

The Complaint plausibly alleges the existence of an official policy or its equivalent for purposes of standing.  "A municipal policy may be pronounced or tacit and reflected in either action or inaction."  *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (addressing municipal liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)).  "In the latter respect, a 'city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution."  *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom" for purposes of § 1983.  *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.)); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ("The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact.").

The parties dispute whether a plaintiff establishes an official policy or its equivalent for purposes of standing under *Shain* and *Lyons* by showing a policy or custom for purposes of stating a § 1983 claim for municipal liability under *Monell*.  The Court agrees with the district courts that have applied *Monell* and its progeny when evaluating whether a plaintiff has alleged an official policy or its equivalent for purposes of conferring standing.  *See An*, 2017 WL 455434, at *3 n.1 (citing *Battle v. City of New York*, No. 11 Civ. 3599, 2012 WL 112242, at *4 (S.D.N.Y. Jan. 12, 2012); *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011)).  *But see MacIssac v. Town of Poughkeepsie*, 770 F.Supp.2d 587, 597, 601 (S.D.N.Y. 2011).  As *Shain* made clear, an official policy or *its equivalent* is required for standing.  356 F.3d at 216.

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick*, 563 U.S. at 61 (internal quotation marks omitted).  Deliberate indifference under a failure to train or supervise theory has three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation.  Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.  Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citations omitted); *see Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992).

"The operative inquiry is whether th[e] facts demonstrate that the policymaker's inaction was the result of conscious choice and not mere negligence."  *Cash*, 654 F.3d at 334 (internal quotation marks omitted).  As such, "deliberate indifference may be inferred

6

where the need for more or better supervision to protect against constitutional violations

was obvious, but the policymaker fail[ed] to make meaningful efforts to address the risk

of harm to plaintiffs." *Id.* (internal quotation marks and citations omitted).

  The Complaint adequately alleges the equivalent of an official policy based on a failure

to supervise or train.  The allegations satisfy all three requirements for deliberate indifference

under *Walker*.  First, the Complaint plausibly alleges that the City knows to "a moral certainty"

that NYPD officers will confront individuals filming them.  *Walker*, 974 F.2d at 297.  The City

issued the FINEST Message, entitled "Recording of Police Action by the Public," that reminded

officers that the public may legally record police interactions.

  Second, the Complaint plausibly alleges a history of employees mishandling the situation

in which an officer is being recorded.  The Complaint cites 47 lawsuits, 18 news reports and

hundreds of complaints to the CCRB involving allegations that NYPD officers arrested or

otherwise interfered with individuals who were recording them in public.  Further, the CCRB

concluded that complaints regarding police interactions in which the officer was being filmed

warranted an Issued-Based Report, a document the CCRB produces if its investigation "reveals

problems that go beyond specific acts of misconduct and suggest the need for a change in police

department policy, procedures, or training."  At this stage of the litigation, these allegations

support the inference of a history of NYPD officers mishandling situations in which individuals

film police activities in public.  *See Edwards v. City of New York*, No. 14 Civ. 10058, 2015 WL

5052637, at *5 (S.D.N.Y. Aug. 27, 2015) (holding that history of misconduct plausibly inferred

from "litany of sources" regarding alleged brutality by Department of Corrections ("DOC")

officers, which included 18 lawsuits, multiple news articles, a report by the United States

Attorney's Office for the Southern District of New York and testimony by DOC Commissioner);

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 7339 (S.D.N.Y. 2012) (denying motion to dismiss where the plaintiff cited over 15 cases of similar misconduct, as well as a state criminal court opinion documenting misconduct in the plaintiff's case, which "allow[ed] the [c]ourt to draw the inference that there is a history of [misconduct]").

Third, the Complaint plausibly alleges that the "wrong choice" by a police officer will "frequently" deprive an individual of a constitutional right. *Walker*, 974 F.2d at 298. The FINEST Message expressly warns officers that "intentional interference such as blocking or obstructing cameras or ordering the person to cease . . . violates the First Amendment."

The allegations regarding the numerous lawsuits, news reports, complaints to the CCRB between 2014 and 2016 and the CCRB's decision to prepare the so-called "bystander report" not only support the inference that the City's need for more or better supervision to protect against constitutional violations was obvious, they also support the inference that the City failed to make meaningful efforts to address the risk of harm. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("An obvious need may be demonstrated through proof of repeated complaints of civil rights violations . . . ."); *Cash*, 654 F.3d at 334 ("[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." (internal quotation marks and citations omitted)). The City's argument that a plaintiff cannot rely on these sources because they contain hearsay is unavailing; although this objection may prevail on summary judgment, it does not on this Rule 12 motion. *See Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (rejecting the defendant's argument on a motion to dismiss that a plaintiff cannot allege "deliberate indifference by pointing to other complaints and settlement agreements since

these papers contain unproven allegations" but observing that such sources "would hardly prevent summary judgment"); *cf. White v. City of New York*, No. 13 Civ. 7421, 2015 WL 4601121, at *8 (S.D.N.Y. July 31, 2015) ("Courts have taken into account the existence of similar lawsuits when deciding whether a plaintiff has adequately alleged a *Monell* claim."). Accordingly, the Complaint plausibly alleges a municipal policy based on a failure to supervise or train.

The City argues that Plaintiff lacks standing in light of the FINEST Message, which it contends is a constitutionally-adequate official policy. In support, it cites *Curtis v. City of New Haven*, 726 F.2d 65 (2d Cir. 1984). In that case, the Second Circuit cited the Supreme Court's observation in *Lyons* that a plaintiff who sought injunctive relief against a municipality relating to chokeholds by police "would have had to allege that he would have another encounter with the police" and "either that *all* [of the municipality's] police officers *always* choke citizens with whom they have an encounter or that the city ordered or authorized its police officers to act in that manner." *Id.* at 67 (citing *Lyons*, 461 U.S. at 105–06). The Second Circuit held that because the defendant municipality's "General Orders" in that case did not "order or authorize police officers to act the way the juries found that they did," the plaintiff lacked standing. *Id.* The City reasons that Plaintiff cannot allege standing because the FINEST Message did not authorize the NYPD officers to arrest Plaintiff in July 2014 solely for recording a police interaction.

Neither *Curtis* nor *Lyons* stands for the proposition that a plaintiff is foreclosed from alleging standing whenever the municipality has a written policy that is constitutionally adequate. As subsequent cases make clear, a "municipal policy" may be found "[w]here a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally." *Amnesty Am.*, 361 F.3d at 126. "Such circumstances may be found, for example, where the city

is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them . . . ."  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  Importantly, a municipality's policy of inaction may satisfy *Lyons* because it is tantamount to authorizing, albeit through acquiescence, the subordinates' conduct. *See Cash*, 654 F.3d at 324 ("where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom" under § 1983 (quoting *Amnesty Am.*, 361 F.3d at 126)).  The Complaint therefore has adequately alleged an official policy or its equivalent.  *See Shain*, 356 F.3d at 215.

### 2. Likelihood of Future Harm

The Complaint adequately alleges the likelihood of future harm.  A future harm is sufficiently likely if "[t]he injury or threat of injury" is "both real and immediate, not conjectural or hypothetical."  *Shain*, 356 F.3d at 215 (internal quotation marks omitted).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . ."  *Lyons*, 461 U.S. at 102.  A plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way."  *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *Lyons*, 461 U.S. at 111).

Contrary to the City's argument, Plaintiff does not solely rely on the allegations regarding his prior arrest to show a sufficient likelihood that he will be wronged in a similar way.  Rather, the Complaint alleges that Plaintiff continues to film public police activity about twice per month and that this conduct will bring him into contact with police officers.  Given the adequately pleaded municipal policy, the Complaint alleges a real and immediate possibility that an NYPD officer will arrest Plaintiff or otherwise interfere with his ability to record police activity in the

future.

This case is distinguishable from *Lyons* and *Shain*.  Unlike the plaintiffs in those cases, Plaintiff's "risk of future injury does not depend on his being arrested for unlawful conduct and so he cannot avoid that injury by following the law."  *Floyd v. City of New York*, 283 F.R.D. 153, 169–70 (S.D.N.Y. 2012); *see MacIssac*, 770 F. Supp. 2d at 601 (observing that courts have held that "plaintiffs had standing to sue for injunctive relief in part because their likelihood of suffering the same harm again did not depend on them willfully breaking the law").

Consequently, the Complaint adequately alleges an official policy and likelihood of future harm necessary to confer standing to pursue injunctive relief.  For the same reason, the Complaint adequately alleges standing to pursue declaratory relief.  *See Peck v. Baldwinsville Cent. Sch. Dist.*, 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (observing that *Lyons* and *Shain* govern whether plaintiff has standing to pursue declaratory relief); *Nicholas v. City of New York*, No. 15 Civ. 9592, 2017 WL 766905, at *9 (S.D.N.Y. Feb. 27, 2017) (holding plaintiff has standing to pursue injunctive and equitable relief where he has alleged an ongoing practice or custom by the defendants and threat of future harm).

### B.    The City's Remaining Arguments

The City makes three additional arguments in opposition to Plaintiff's motion.  None is persuasive.  First, the City argues, without citation to any authority, that the request for injunctive relief is not actionable because it is merely a command to obey the law.  At this stage of the litigation, however, the City's challenge to the scope of any injunctive relief is premature. *See Aguilar*, 811 F. Supp. 2d at 829 ("Whether the plaintiffs will eventually be able to obtain any injunctive relief, and what the scope of that relief would be, are issues that must await the development of the evidence."); *In re Marsh Erisa Litig.*, No. 04 Civ. 8157, 2006 WL 3706169,

at *4 (S.D.N.Y. Dec. 14, 2006) ("[A]t the pleading stage, the Court will not foreclose the later possibility of more narrowly tailored injunctive relief.  Plaintiffs have met the pleading requirements of Federal Rule of Civil Procedure 8(a) by giving Defendants sufficient notice that they seek injunctive relief pertaining to the allegations of the Complaint.").

Second, the City argues that the claim for declaratory relief should be dismissed because the "entirety of the dispute" is based on the July 28 arrest, and that declaratory relief is inappropriate where only past acts are involved.  *See Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 407 (S.D.N.Y. 2010) (noting there is "no basis for declaratory relief where only past acts are involved" (internal quotation marks omitted)).  This misreads the Complaint, which alleges that Plaintiff continues to record police and, as a result of the City's policy relating to its failure to train or supervise NYPD officers, the officers are likely to interfere with his recording in the future.  These allegations are sufficient on this motion.

Third, the City argues that the Complaint fails to state a claim because it fails to allege adequately the existence of an official policy under *Monell*.  However, for the reasons stated above, the Complaint's allegations are sufficient under a failure to train or supervise theory.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for leave to file a First Amended Complaint in the form of the Proposed Amended Complaint is GRANTED.

The Clerk of Court is directed to close the motion at Docket No. 33.

Dated:  June 1, 2017
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE